**Duncan Peder McKENZIE, Jr.,**
**Petitioner-Appellant,**

v.

**Henry RISLEY, et al.,**
**Respondents-Appellees.**

**No. 85–4156.**

United States Court of Appeals,
Ninth Circuit.

Argued May 9, 1986.
Submitted July 16, 1986.

Decided Oct. 8, 1986.

As Amended Nov. 12, 1986.

---

Timothy K. Ford, Seattle, Wash., for petitioner-appellant.

Chris D. Tweenten, James M. Scheier, Asst. Attys. Gen., Helena, Mont., for respondents-appellees.

Before WRIGHT and ANDERSON, Circuit Judges, and PRICE, District Judge *.

J. BLAINE ANDERSON, Circuit Judge:

## I. Background

Duncan Peder McKenzie (McKenzie), a Montana state prisoner, appeals from the federal district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. McKenzie was convicted of deliberate homicide by means of torture and aggravated kidnapping in the tragic and grisly death of Lana Harding (Harding), a 23–year old rural school teacher. Following a jury verdict of guilty, McKenzie was sentenced by the trial court to hang. The Montana Supreme Court affirmed the convictions and the sentence. *State v. McKenzie (I)*, 557 P.2d 1023, 171 Mont. 278 (1976). The Montana Supreme Court rejected McKenzie's claim, *inter alia*, that the trial court's jury instructions on presumptions and the Montana death penalty statute violated the Constitution. The United States

---

* The Honorable Edward Dean Price, United States District Judge, Eastern District of California, sitting by designation.

Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *McKenzie v. Montana*, 433 U.S. 905, 97 S.Ct. 2968, 53 L.Ed.2d 1089 (1977).

On remand, the Montana Supreme Court, after reexamining all of the issues raised by McKenzie, adhered to its original decision. *State v. McKenzie (II)*, 581 P.2d 1205, 177 Mont. 280 (1978). The Montana Court held that the jury instructions did not erroneously shift the burden of proof on the issue of intent, but even if they did, such an error would not have affected the jury's verdict because the evidence of intent was overwhelming. 581 P.2d at 1223–24.

Following the Montana Supreme Court's affirmance of the convictions and the sentence in *McKenzie II*, McKenzie sought relief through the Sentence Review Division of the Montana Court. His petition for review was denied. His attempted appeal of that decision to the Montana Supreme Court was also denied because there was no appeal from a decision of the Sentence Review Division.

McKenzie again petitioned for certiorari to the United States Supreme Court. Certiorari was granted, the judgment was vacated, and the case was remanded for further consideration in light of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *McKenzie v. Montana*, 443 U.S. 903, 99 S.Ct. 3094, 61 L.Ed.2d 871 (1979). The Montana Supreme Court once again affirmed the convictions and the sentence. *State v. McKenzie (III)*, 608 P.2d 428, 186 Mont. 481 (1980). This time, however, the Montana Court conceded that some of the jury instructions unconstitutionally shifted the burden of proof to McKenzie to disprove that he had the criminal intent necessary to support his conviction. 608 P.2d at 457–58. His conviction was nevertheless reaffirmed because the court found the unconstitutional jury instructions harmless beyond a reasonable

doubt in light of the overwhelming evidence of intent. 608 P.2d at 459.

McKenzie once again sought certiorari from the United States Supreme Court. This time certiorari was denied. *McKenzie v. Montana*, 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507 (1980) (Justices Marshall and Brennan dissenting). McKenzie then filed a petition for post-conviction relief or habeas corpus in the Montana state district court. The petition was denied. The denial was affirmed by the Montana Supreme Court. *McKenzie v. Osborne (McKenzie IV)*, 640 P.2d 368, 195 Mont. 26 (1981).

McKenzie then filed a petition for a writ of habeas corpus in federal district court. The district court dismissed the petition and it is from that dismissal that McKenzie timely appeals to this court. We affirm.

## II. *Discussion*

### A. *Sandstrom* Instructions

#### 1. Standard of Review

We review a district court's decision on a petition for a writ of habeas corpus *de novo*. *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). The district court's holding that the constitutional error in giving the *Sandstrom* instruction was harmless error is a mixed question of law and fact which we review *de novo*. *Fendler v. Goldsmith*, 728 F.2d 1181, 1190 n. 21 (9th Cir.1983).

#### 2. Harmless Error

A *Sandstrom* instruction is one that shifts the burden of proof from the prosecution to the defense on an essential element of the criminal offense, such as intent. *Sandstrom v. Montana*, 442 U.S. 510, 523–24, 99 S.Ct. 2450, 2458–59, 61 L.Ed.2d 39 (1979). The jury instructions given by the trial court in McKenzie's case contained statements that "the law presumes a person intends the ordinary consequences of his ordinary acts" and that "an unlawful act is done with unlawful intent." Neither party disputes that these are un-

constitutional *Sandstrom* instructions. Therefore, the first issue we address is whether *Sandstrom* instructions on the element of intent can ever be considered harmless error.

Until its recent opinion in *Rose v. Clark*, — U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the United States Supreme Court had not resolved this question.[1] *See Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983).

The Court found in *Rose* that an instruction that impermissibly shifted the burden of proof on intent "is not 'so basic to a fair trial' that it can never be harmless." *Rose*, 106 S.Ct. at 3107. Furthermore, the Court found that the crucial inquiry is not whether intent was a disputed issue at trial. *Id.*, 106 S.Ct. at 3109. Instead, it is "whether, 'on the whole record ... the error ... [is] harmless beyond a reasonable doubt.' " *Id.* (elipses and brackets in original) (quoting *United States v. Hasting*, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983)). *See also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 ('before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt'); *Connecticut v. Johnson*, 460 U.S. at 97 n. 5, 103 S.Ct. at 983 n. 5 (Powell, J., dissenting) (in cases of *Sandstrom* error, 'the inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption')." *Id.* Therefore, *Hamilton* and *Hagler* are overruled to the extent that *Hamilton* formulates an absolute rule against the application of the harmless error doctrine when intent is a disputed issue and to the extent that *Hagler* focuses inquiry on whether or not intent was actually a disputed issue rather than on whether or not the error was harmless beyond a reasonable doubt. *See Herd*, 800 F.2d 1526.

The underlying reasoning and policy arguments found in *Rose* support overruling *Hamilton* and its progeny. The harmless error doctrine established in *Chapman* has been applied to a wide variety of constitutional errors ranging from failure to permit cross-examination on witness bias and denial of a defendant's right to be present at trial to admission of a confession obtained in violation of defendant's right to counsel and admission of evidence obtained in violation of the Fourth Amendment. *Rose*, 106 S.Ct. at 3104. As has often been stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Id.* at 3106; *Delaware v. Van Arsdall*, 475 U.S. ——, ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. Hasting*, 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). The type of errors cited by *Chapman* that could never be harmless "either aborted the basic trial process, *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct.

---

**1.** In this circuit, in the seminal case of *In re Hamilton*, 721 F.2d 1189 (9th Cir.1983), we held that if intent was a disputed issue at trial, *Sandstrom* instructions on the element of intent can never be considered harmless error. The test we used to discover whether intent was disputed was "whether, under the special facts of each case, intent was a live issue, the subject of a minimum of dispute as a practical matter to trigger the corrupting impact of the *Sandstrom* instruction." *Hagler v. Callahan*, 764 F.2d 711, 714 (9th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 3334, 92 L.Ed.2d 739 (1986) (citing *Conway v. Anderson*, 698 F.2d 282, 285 (6th Cir.), *cert. denied*, 462 U.S. 1121, 103 S.Ct. 3092, 77 L.Ed.2d 1352 (1983)).

Several cases applied the rule laid down in *Hamilton* and the test established in *Hagler*. *See, e.g., Church v. Kincheloe*, 767 F.2d 639 (9th Cir.1985) (*Sandstrom* error harmless where defense was not lack of intent but mistake), *cert. denied*, — U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Hagler*, 764 F.2d 711 (*Sandstrom* error harmless where intent was not contested and defense was alibi); *Herd v. Kincheloe*, 792 F.2d 1441 (9th Cir.1986) (if, upon remand, the court concludes intent was not disputed, it should apply the harmless error doctrine to the *Sandstrom* instructions), *withdrawn in light of Rose v. Clark*, 106 S.Ct. 3101.

In light of *Rose v. Clark*, we find that *Hamilton, Hagler*, and their progeny are no longer valid. *See Herd v. Kincheloe*, 800 F.2d 1526 (9th Cir.1986).

844, 2 L.Ed.2d 975 (1958) (use of coerced confession), or denied it altogether, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased adjudicator)." *Rose*, 106 S.Ct. at 3106 n. 6. Thus, if a criminal defendant, represented by counsel, has the opportunity to present evidence and argument before an impartial judge and jury, "there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis." *Id.* at 3106–07.

Furthermore, the purpose underlying *Sandstrom* supports our conclusion that a burden-shifting instruction on the element of intent is subject to the harmless error doctrine. The general rule is that "the prosecution must prove 'every fact necessary to constitute the crime with which [the defendant] is charged' beyond a reasonable doubt." *Id.* at 106 S.Ct. at 3107 (quoting *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The purpose of this rule is to ensure that only the guilty are criminally punished. *Sandstrom* was a logical extension of that rule. But, "when the verdict of guilty reached in a case in which *Sandstrom* error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the rule serves." *Id.*

■ Therefore, *Sandstrom* error on the element of intent is subject to harmless error analysis. But our inquiry does not end here. We must next address whether, under this harmless error analysis, the *Sandstrom* error that occurred in McKenzie's case was harmless beyond a reasonable doubt.

As stated above, the inquiry is not whether intent was a disputed issue at trial. Instead, the inquiry centers on whether the evidence of intent is so dispositive that a reviewing court can say, beyond a reasonable doubt, that a jury would have found it unnecessary to rely on the presumption created by the *Sandstrom* instruction. *See Connecticut v. Johnson*, 460 U.S. at 97 n. 5, 103 S.Ct. at 983 n. 5.

How do we determine whether evidence of intent reaches this level? In *Rose*, the Court held that:

When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. (citation omitted). In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. (citation omitted). In that event the erroneous instruction is simply superfluous: The jury has found, in *Winship's* words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt. (citation omitted).

*Rose*, 106 S.Ct. at 3107–08.

■ So, two questions must be answered: (1) did the jury find that the relevant predicate facts existed beyond a reasonable doubt, and (2) from those facts can intent be inferred so that no rational juror could find that the defendant committed the acts without intending to cause injury?

■ There is no doubt that in McKenzie's case the jury found, beyond a reasonable doubt, that he had committed the predicate acts—that is, he had kidnapped and murdered Lana Harding. In fact, McKenzie never denied or disputed that he kidnapped and killed Harding. His defense at trial focused entirely on the issue of mental competence, relying on the traditional insanity defense as well as the defense of diminished capacity. The jury's verdicts established that the only contested issue was whether McKenzie had the capacity to form a criminal intent.

The only question remaining, therefore, is whether from these predicate acts intent could be so conclusively established "that no rational jury could find that [McKenzie] committed the relevant criminal act but did not *intend* to cause injury." *Id.* (Emphasis in original).

In this case, the pathologist who examined Harding's body testified how the killing occurred. He testified that he found

evidence of sexual intercourse in close proximity to the time of death. He also testified that there was evidence consistent with the fact that Harding had been dragged. Nine abraded bruises were found on the front part of her chest in the area of her breasts. A segment of used clothesline rope had been found around Harding's neck which had been severely restricted about 45 minutes before her death, causing injuries severe enough to completely compress the airway into her lungs. Finally, there was evidence of several blows to Harding's head. The death blow had left open the entire side of her head. Her body was found clothed only in a shirt, sweater and bra. She was found draped over the tongue of a grain drill.

There is little doubt that the trial judge in McKenzie's case could have instructed the jury that it could *infer* rather than presume intent from the defendant's conduct. *Id.* "[I]t is enough to recognize that in some cases that inference is overpowering." *Id.* In McKenzie's case, the Montana Supreme Court held:

> The evidence on the issue of intent is overwhelming, uncontradicted and permits but one rational conclusion—that [McKenzie] purposefully and knowingly intended to kidnap and kill [Harding]. We conclude that a reasonable juror could not have found otherwise in the proof presented by the State, the instructions on rebuttable presumptions not withstanding.

*McKenzie (III)*, 608 P.2d at 459. We agree. It would defy common sense to conclude that a violent torture-murder, such as the one committed in this case, was committed unintentionally, *id.* at 3108 n. 10; *See Connecticut v. Johnson*, 460 U.S. at 99 n. 7, 103 S.Ct. at 984 n. 7 (Powell, J., dissenting); *See also Hopper v. Evans*, 456 U.S. 605, 613, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367

(1982), and it follows that no rational jury would need to rely on the erroneous *Sandstrom* instructions on the issue of intent.

In light of *Rose*, and after examining the record, we affirm the district court's denial of McKenzie's petition for a writ of habeas corpus to the extent that the petition was based on the unconstitutional *Sandstrom* instructions to the jury on the element of intent.[2]

**B. Plea Agreement**

**1. Standard of Review**

■ To determine whether a plea agreement was violated, this court must first determine "what the parties to the plea bargain, reasonably understood to be the terms of the agreement." *United States v. Sutton, et al.*, 794 F.2d 1415, 1423 (9th Cir.1986) (quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979)); *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir.1985). What the parties agreed to "is a question of fact to be resolved by the district court." *Sutton*, 794 F.2d at 1423 (quoting *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980)); *Read*, 778 F.2d at 1441. Accordingly, the district court's findings as to the terms of a plea agreement are reviewed only for clear error. *Sutton*, 794 F.2d at 1423; *Read*, 778 F.2d at 1441. *See also Krasn*, 614 F.2d at 1233.

■ Furthermore, in federal habeas corpus proceedings reviewing a state death sentence, there is a presumption of correctness applicable to factual findings of a trial court. 28 U.S.C. § 2254(d).

**2. Discussion**

■ Plea agreements are subject to contract law standards of interpretation. *Sutton*, 794 F.2d at 1423. The general rule

---

**2.** We find no reason to remand this case to the district court on the *Sandstrom* error issue as was done in *Rose*. The Supreme Court felt it was necessary to remand in *Rose* because the district court had concluded that a *Sandstrom* error could never be harmless where a defendant contests intent. Therefore, the district court made no determination as to whether the error

committed in that case was harmless beyond a reasonable doubt. The same is not true in McKenzie's case. The district court clearly applied the harmless error analysis to the *Sandstrom* instructions and made a determination whether the error was harmless beyond a reasonable doubt. Therefore, we affirm on the record before us.

governing the enforcement of plea agreements is as follows:

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). In determining whether a plea agreement has been broken, courts look to "what was 'reasonably understood by [the defendant] when he entered his plea of guilty.'" *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979) (quoting *United States v. Crusco*, 536 F.2d 21, 27 (3d Cir.1976)). If disputed, the terms of the agreement will be determined by objective standards. *United States v. Arnett*, 628 F.2d at 1164.

*United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984).

■■■ The alleged plea agreement at issue involved a guilty plea to deliberate homicide and aggravated assault with a 50–year and 20–year sentence to be imposed consecutively. Counsel for both sides met with Montana state district court Judge Nelson and obtained his approval. A date was set, approximately one week later, for the entry of the plea of guilty. A few days prior to the day set for entry of the plea, McKenzie was informed that the deal was off. McKenzie argues that this was a breach of a final and binding plea agreement, or, at the very least, his subsequent reliance on that agreement made it binding. The state, on the other hand, argues that the agreement was contingent on approval by Harding's parents. Because they did not approve, the deal was called off.

The federal district court found, in denying McKenzie's habeas corpus petition, that "there were some plea bargaining discussions between counsel, but no resolution was reached" and that "no plea bargain could be finalized or presented to Judge Nelson without first discussing it with Lana Harding's family." Furthermore, the federal district court found that "[a]t the close of the meeting, both defense counsel believed in their minds that a final and binding plea bargain had been reached," but, at the same time, "both prosecutors believed in their minds that no binding agreement had been set forth and tentatively approved by Judge Nelson." From these findings the federal district court concluded "that the evidence shows that there was no meeting of the minds among the four attorneys regarding a final, binding plea agreement and it was unreasonable on the part of the attorneys ... to think otherwise."

These findings are not clearly erroneous. The prosecutors met with both defense attorneys to discuss the possibility of a plea bargain. These discussions went on for two days. The record indicates that during those two days, the prosecutors made it clear that they wished to discuss any plea agreement with the victim's family before finally approving it. McKenzie argues, however, that, at the meeting with the trial judge, the prosecutors never mentioned the contingency, thus waiving it, and therefore the plea agreement became final upon the trial court's approval.

At best, the evidence is conflicting on this point. The federal district court made no finding as to whether the lawyers discussed the contingency with the trial judge. But we infer from the trial judge's fact findings that defense counsel was or should have been aware of the contingency and that the contingency remained unresolved, preventing a final binding agreement. We agree that it was objectively unreasonable for defense counsel to have believed that the prosecutor waived the contingency at the meeting with the trial judge.

■■■ Deciding that there was no finalized plea agreement does not end our inquiry. A defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding. McKenzie argues that his attorneys' disclosure of the weaknesses they perceived in the state's case and of the names of their FBI witnesses, pursuant to the alleged plea

agreement, was detrimental to his defense. The district court found that "the testimony and the names of the FBI witnesses and the chain of custody witnesses were developed independent[ ]" of the disclosures made by defense counsel. This finding is not clearly erroneous.

■ Furthermore, any reliance must be reasonable. In light of our holding that it was unreasonable for McKenzie's attorneys to believe that the contingency had been waived, it was also unreasonable for them to rely on the agreement as though it were not contingent.

Because we have concluded that the plea agreement was subject to a contingency and that any reliance on the contingent plea agreement was unreasonable, we do not reach the issue whether the trial court's initial agreement to impose a prison sentence on a guilty plea made its later imposed death sentence unconstitutional.

### C. Constitutionality of Montana's Death Penalty Statutes [3]

#### 1. Standard of Review

The legality of a sentence is a question of law reviewable *de novo. United States v. McCrae,* 714 F.2d 83, 84 (9th Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983).

#### 2. Discussion

The constitutionality of a death penalty statute is reviewed on the basis of the standards established in *Furman v. Geor-*

*gia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and their progeny. The primary concerns the Supreme Court has expressed in discussing the death penalty have been the need for guidance of the fact finder's discretion and an opportunity for review of the exercise of that discretion. The Court has thus upheld statutes providing for the sentencing authority's consideration of aggravating and mitigating factors, written findings stating reasons for imposition of the penalty, and a procedure designed to ensure review of the legality and appropriateness of the sentence. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). These are, then, the guiding principles we will follow in determining whether Montana's death penalty statute is constitutional.

#### a. Aggravating and Mitigating Factors

■ McKenzie claims that the crimes for which he was convicted contained aggravating circumstances which merely repeated elements of the underlying crime and therefore did not perform the required function of narrowing the class of persons eligible for the death penalty. Aggravating circumstances, he rightfully contends, must be found in addition to the crime itself and add something to the underlying

---

**3.** McKenzie's sentence was imposed by virtue of sections 94–5–105 and 95–5–304, Revised Code of Montana (1947). At the time of the death of Lana Harding, these statutes read:

**94–5–105. Sentence of death for deliberate homicide.** (1) When a defendant is convicted of the offense of deliberate homicide the court shall impose a sentence of death in the following circumstances, unless there are mitigating circumstances:

(a) The deliberate homicide was committed by a person serving a sentence of imprisonment in the state prison; or

(b) The defendant was previously convicted of another deliberate homicide; or

(c) The victim of the deliberate homicide was a peace officer killed while performing his duty; or

(d) The deliberate homicide was committed by means of torture; or

(e) The deliberate homicide was committed by a person lying in wait or ambush; or

(f) The deliberate homicide was committed as a part of a scheme or operation which, if completed, would result in the death of more than one person.

(2) Notwithstanding the provisions of subsection (1) and regardless of circumstances, when a defendant is convicted of the offense of deliberate homicide under subsection (1)(a) of section 94–5–102 in which the victim was a peace officer killed while performing his duty the court shall impose a sentence of death.

**94–5–304. Sentence of death for aggravated kidnaping.** A court shall impose the sentence of death following conviction of aggravated kidnaping if it finds that the victim is dead as the result of the criminal conduct unless there are mitigating circumstances.

elements before the death penalty can be constitutionally applied. *See Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2742–43, 77 L.Ed.2d 235 (1983).

■■■■ The Montana statutes, on their faces, require a finding that at least one aggravating circumstance, above and beyond the underlying crime, existed before the death penalty can be imposed.[4] It is readily apparent that McKenzie's conviction for deliberate homicide by means of torture required the jury to find more than just the elements of a simple homicide. They also had to find that Harding was tortured. This is one of the aggravating circumstances enumerated in the Montana statute. Also, McKenzie's conviction for aggravated kidnapping required more than just finding the elements of kidnapping— the jury was also required to find that Harding died as a result of the kidnapping. The aggravating circumstances found in Montana's death penalty statute add to the underlying crime, while at the same time narrowing the class of people eligible for the death penalty.

■■■■ Furthermore, during sentencing, the trial judge found, before he sentenced McKenzie to death, that the following aggravating circumstances existed: (1) that the murder was committed in the commission of a felony; (2) during a sexual attack on the victim; and (3) "it was a brutal, conscienceless, torture rape and deliberate killing of a human being."[5] *McKenzie I,* 557 P.2d at 1034.

■■■■ Both statutes also specifically require that the death penalty be imposed only if there are no mitigating circumstances. The Montana Supreme Court held, in reviewing McKenzie's case, that these statutes could not be read in isolation, but had to be read together with other sentencing provisions. *McKenzie (III),* 608 P.2d at 450. The Montana court then pointed to

sections of the Montana criminal code that provide for preparation of a presentence report setting forth the circumstances of the offense and the individual characteristics of the defendant. *Id.* (citing § 95–2204 R.C.M. (1947)). The court noted that such a report provides the sentencing authority with whatever circumstances may exist in mitigation of the defendant's conduct. *McKenzie (III),* 608 P.2d at 450. Also, a defendant in a capital case is entitled to a hearing in which he may present testimony and other evidence in mitigation. *Id.* These statutes provide for ample consideration by the sentencing authority of any mitigating circumstances in a capital case.

■■■■ McKenzie claims that the death penalty statutes themselves must contain these procedural safeguards and that a court cannot cure these statutory deficiencies by judicial construction in the case itself as was done here. He cites *United States v. Harper,* 729 F.2d 1216 (9th Cir. 1984) which stated:

[I]t would certainly be anomalous to hold that the guidelines, which are required in order to limit the discretion of the sentencing authority, may be supplied by the sentencing authority itself.... The requirement that the discretion be "suitably limited and directed" clearly requires *external* limitations.

Moreover, the Court's opinions compel the conclusion that, whether the sentencing authority is the judge or the jury, the guidelines must come from Congress, not from the courts.

In light of the above, we believe it clear that the death penalty provision of the espionage statutes is unconstitutional. It cannot be saved by judicial formulation of the missing, but essential, statutory guidelines.

*Id.* at 1224–26.

While the Montana death penalty statute may not have these discretion-limiting, leg-

---

4. Any rational basis for finding that the defendant deserves a harsher sentence is an adequate aggravating circumstance. All it need do is narrow the pool of defendants to be considered for a capital sentence in a meaningful way. *Zant,* 103 S.Ct. 2742–43.

5. An aggravating circumstance can be found by a judge without a jury. *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984).

islative guidelines within the statute itself, the Montana court was not creating these guidelines *ad hoc,* as was done in *Harper.* Instead, it was looking to external, legislatively enacted statutes which provided the needed guidelines for the sentencing judge.

Furthermore, the U.S. Supreme Court has upheld a death penalty statute where the Court relied in part on the construction placed on the statute by the state appellate court in the very case being reviewed. *Jurek v. Texas,* 428 U.S. 262, 272, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976).

### b. Written Findings

The trial court judge, as the sentencing authority, made extensive written findings stating his reasons for imposing the death penalty.

### c. Judicial Review-Proportionality

▮▮▮ McKenzie was entitled to, and as it turned out took great advantage of, his right to appeal the legality of his sentence. His case has been before the Montana Supreme Court four times and the United States Supreme Court three times. He also had the right to ask the Montana Sentence Review Division to review the appropriateness of his sentence.[6] He did this. The requirement that there be a procedure designed to ensure review of the death sentence was patently satisfied.

▮▮▮ McKenzie also argues that the review by the Sentence Review Division did not ensure a review for proportionality. Comparative proportionality review is no longer constitutionally required in every state court death sentence review. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Regardless, the entire purpose of an appeal to the Sentence Review Division is to determine the appropriateness of a death sentence. Therefore, a review for proportionality was provided McKenzie.

▮▮▮ We find the death penalty statutes in question in this case constitutional. There are precise statutory requirements for finding aggravating and mitigating circumstances, and a procedure for fleshing out the facts with respect to such circumstances. There is appellate review at two levels, insuring that the sentence is both legal and proportional to the nature and class of crime.

### D. Failure of Jury to Find Intent

▮▮▮ In *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court indicated that a finding of intent may be a condition precedent to the imposition of the death penalty. McKenzie argues that the jury failed to make a specific finding that he intended to kill Harding, therefore, the death sentence imposed by the judge cannot be upheld. But, the Court, in *Enmund,* did not specify at what stage in the proceeding intent must be found. A recent Supreme Court decision, however, examined in whose hands properly lies the determination of whether the defendant possessed the requisite degree of culpability. *Cabana v. Bullock,* —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). The Court held that a jury finding that the defendant possessed the requisite culpability is not required by the Eighth Amendment. *Id.* at 695 n. 1, 88 L.Ed.2d at 714 n. 1. A death sentence may stand if the requisite findings are made in an adequate proceeding before some appropriate tribunal, such as a trial judge or an appellate court. *Id.* at 700, 88 L.Ed.2d at 720.

Assuming, without deciding, that McKenzie is correct that the jury made no specific finding on intent, the question then becomes whether the trial judge or the Montana Supreme Court made the requisite finding of intent in this case. McKenzie argues that the trial court's findings were

---

**6.** McKenzie claims that review by the Sentence Review Division was another *ad hoc* procedure, judicially constructed for this particular case, and therefore the standards governing review were inadequate. For the same reasons as stated above in the discussion of aggravating and mitigating factors, the judicial examination of external statutes which provided for review supplied the necessary legislatively enacted guidelines.

not independent but referred to evidence as found by the jury and that the Montana Supreme Court found intent to kill "given mental capacity." Therefore, he argues, the requisite finding of intent was not made.

Nowhere in *Cabana* does the Court require that the trial judge or a state appellate court make a completely independent finding of intent. All that is required is that "at some point in the process, the requisite factual finding as to the defendant's culpability has been made." *Id.* at 697, 88 L.Ed.2d at 717. (footnote omitted). Such a factual finding was made by the trial court judge. Regardless, our review of the trial judge's Findings, Conclusions, Judgment and Sentencing Order clearly indicates that he made an independent finding of McKenzie's intent to kill and simply used the jury's findings to support his opinion:

> The evidence in the case, *and* as found by the jury, discloses a brutal, conscienceless, torture, rape and *deliberate* killing of a human being.

E.R. at 33 (App. V), pg. 7. (Emphasis added).

E. Mitigating Circumstances

 McKenzie claims that the trial court erred by rejecting "all" the evidence presented concerning mental defect and then finding that no mitigating circumstances existed. He argues that the trial judge did not "consider" mitigating circumstances to the extent required by the Eighth Amendment and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

However, *Eddings* merely held that the sentencer may not be *precluded* from considering any mitigating factor, nor may the sentencer refuse to consider *as a matter of law*, any relevant mitigating evidence. *Id.* at 114, 102 S.Ct. at 876. The record shows that the trial judge here was not precluded from considering any mitigating factors nor did he refuse, as a matter of law, to consider relevant mitigating evidence. In fact, the trial judge appears to have properly considered all relevant mitigating evidence [7] and simply rejected it, which was within his power to do. "The sentencer, ... may determine the weight to be given relevant mitigating evidence." *Id.* at 114–115, 102 S.Ct. at 877.

The district court's denial of McKenzie's petition for a writ of habeas corpus is

AFFIRMED.

---

7. "That there is nothing in the evidence of the case, nor in the presentence investigation [which contains mitigation evidence], nor in the character, nature or background of the defendant, nor in any other matter presented to the court which mitigate his conduct or the sentence required by law."
E.R. at 33 (App. V), pg. 7.