**Robert James GROESBECK, Petitioner,**

v.

**Vernon G. HOUSEWRIGHT,
Respondent.**

**No. CV–R–85–185–ECR.**

United States District Court,
.D. Nevada.

March 17, 1987.

the agreement.

N. Patrick Flanagan, III, Asst. Federal Public Defender, Reno, Nev., for petitioner.

Brian McKay, Atty. Gen., Carson City, Nev., for respondent.

ORDER

EDWARD C. REED, Jr., Chief Judge.

On July 10, 1986, this Court granted the petitioner's request for a federal writ of habeas corpus under 28 U.S.C. § 2254. The basis for the issuance of the writ was that the petitioner's conviction for murder in 1961 was achieved apparently as the result of an impermissible *Sandstrom* instruction. Because the law at that time indicated that a conviction based on such a burden shifting instruction was unconstitutional, this Court granted the petition. The respondents appealed this order to the Ninth Circuit.

After the petition issued, the United States Supreme Court handed down *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). In this case, the Court held that the presence of *Sandstrom* error no longer indicated that the conviction was automatically void. *Id.,* at 3106. Instead, the Court found that such error may in certain cases be harmless beyond a reasonable doubt. *Id.* Therefore, the Court concluded that all *Sandstrom* error must also be subjected to a harmless error analysis before the writ may issue. *Id.* The Ninth Circuit followed quickly in suit with *McKenzie v. Risley,* 801 F.2d 1519 (9th Cir.1986), and *Herd v. Kincheloe,* 800 F.2d 1526 (9th Cir.1986). Those cases echoed the requirement of *Rose* that all *Sandstrom* error be submitted to harmless error analyses.

In view of these cases, this Court, on October 21, 1986, transmitted its notice of willingness to reconsider its previous order. In view of this notice, the Ninth Circuit vacated the earlier order and remanded the case back to this Court for consideration of the *Sandstrom* instruction in light of *Rose, McKenzie,* and *Herd.* Because the Court finds, after a careful review of the record, that the *Sandstrom* error on the issue of intent in this case was indeed harmless, the petition for a writ of habeas corpus may not issue on that basis.

The facts and procedural history of this case are fully stated in the Court's earlier order, and need not be reiterated here. Suffice it to say for present purposes that

a jury instruction was used at the petitioner's trial which impermissibly shifted to him the burden of proof on intent. Indeed, the offending instruction was a classic *Sandstrom* type instruction, in that it stated

> [u]pon the question of intent, the law presumes a person to intend the reasonable and natural consequences of any act intentionally done; and this presumption of law will always prevail, unless, from a consideration of all the evidence bearing upon the point, the jury entertain a reasonable doubt whether such intention did exist.

Until recently, as noted above, such instructions were reversible error, virtually without exception.

In *McKenzie v. Risley, supra,* pg. 799, however, the Ninth Circuit established that cases involving *Sandstrom* error must still be subjected to a harmless error analysis. In that case, the petitioner had been convicted of first degree murder. The instructions used at trial included an impermissible *Sandstrom* instruction on the issue of intent. The petitioner sought federal habeas relief from the local district court, but that court denied the petition. That court found that, even though *Sandstrom* error was clearly present, the error was harmless beyond a reasonable doubt. *Id.,* at 1523.

The Ninth Circuit upheld the lower court, in accordance with *Rose v. Clark, supra,* pg. 799. Initially, the court noted that the *Rose* case established the fact that shifting the burden of proof on intent is not so basic to a fair trial that it is always harmful. *Id.,* at 1524 (*citing Rose, supra,* pg. 799, 106 S.Ct. at 3107). In addition, the court found that the crucial inquiry was not whether intent had been a disputed issue at trial. *Id.,* (*citing Rose, supra,* pg. 799, 106 S.Ct. at 3109). The crucial issue, the court concluded, is " 'whether, "on the whole record ... the error ... [is] harmless beyond a reasonable doubt." ' " *Id.,* (*quoting Rose, supra,* pg. 799).

In making the harmless error determination, the court decided, two questions must be answered. First, the court must deter-mine whether the jury found that the relevant predicate facts of the crime existed beyond a reasonable doubt. Second, the court must decide whether intent could be inferred from those facts so that no reasonable juror could find that the petitioner committed the acts without intending to cause the injury. *Id.,* at 1525. If both questions are answered in the affirmative, then the fact that the burden of proof on intent was shifted is irrelevant, and any error resulting harmless.

In that case, the court found that the petitioner had committed the relevant predicate facts of the crime beyond a reasonable doubt. Indeed, the petitioner had never denied or disputed the fact that he had kidnapped and killed the victim. His defense at trial rested primarily on the traditional insanity defense, as well as the diminished capacity defense. *Id.* From these predicate facts, the court found that no reasonable juror could find that the petitioner had committed the relevant act without intending to kill the victim. The evidence of the murder indicated that the victim had been raped and beaten severely at the time of her death. A segment of rope had been found about the victim's neck which had been severely restricted for 45 minutes before her death. This caused the victim's airway to compress into her lungs. Additionally, several severe blows to the side of the victim's head had left the entire side of the head open. "It would defy common sense," the court found, "to conclude that a violent torture murder, such as the one committed in this case, was committed unintentionally." *Id.,* at 1526 (*citing Rose, supra,* pg. 799, 106 S.Ct. at 3108 n. 10). On this basis, the court concluded that any error created by the *Sandstrom* instruction was harmless beyond a reasonable doubt.

Although the facts of this case are not as severe as those in *McKenzie,* it also appears that any error created by the *Sandstrom* instruction in this case was harmless beyond a reasonable doubt. First, the jury did find that the petitioner had committed the relevant predicate facts of this crime. Indeed, it seems that the petitioner never

seriously contested the fact that he had killed the victim in this case. His primary line of defense was that he had acted out of self-defense, and that his killing was therefore lawful.

From these predicate facts, the Court finds that no rational juror could find that the petitioner had done the acts described without intending to cause the death of the victim. Initially, the evidence shows that the petitioner and the victim were inside of Myrna Ward's trailer at the time of the shooting. The victim sat at a breakfast nook on a type of bar stool, holding Ward's hand or arm in one of his hands, and a beer bottle in the other. The petitioner stood some distance from the victim, and ordered him to leave the trailer. When the victim refused, the petitioner walked into the bedroom, picked a highpowered rifle out of the closet, loaded it, and returned to the kitchen. He aimed the rifle at the victim, and once again ordered him to leave. The victim then challenged the petitioner to fight with something less deadly than firearms. At this time, the victim apparently "lunged" at the petitioner, who fired and killed him. The pathology report indicates that the bullet struck the victim in the left side of the neck, severed the spinal cord, and then deflected into the right shoulder area.

This evidence bespeaks the intent to kill. The petitioner's actions were purposeful and deliberate. By obtaining the rifle from the bedroom, loading it, and then returning and threatening the victim, the petitioner evinced by his actions the intent to kill the victim if he did not leave the trailer. Indeed, the evidence presented at trial indicated that the petitioner and the victim had committed various robberies in California, and that the petitioner may have been planning to kill the victim for some time because of a dispute regarding those earlier crimes. Thus, the jury was presented with some evidence of premeditation, much less simple intent. By virtue of the weight of evidence presented, the Court finds that no reasonable juror could find that the petitioner committed the acts in this case without also intending to cause

the injury. Any error resulting from this instruction is therefore harmless.

Because the error created by the *Sandstrom* instruction was harmless beyond a reasonable doubt, the petition may not be granted on those grounds. The Ninth Circuit, in remanding this case to this Court, did not send the case back for only the limited purpose of making the harmless error determination. Instead, the circuit returned the entire case to this Court. In view of this, it is proper for this Court to consider the remaining bases for relief set forth in the petitioner's original habeas corpus petition.

In that original petition, the petitioner also complained that the state shifted to him the burden of proof on self-defense, in violation of the Constitution. The instruction at issue indicated that "[t]he burden of proving circumstances which justify or excuse the killing of another is upon the defendant, but the defendant need not prove such circumstances beyond a reasonable doubt but must raise a reasonable doubt." The petitioner claims that it was error for the state court to place upon him the burden of proving self-defense, in that it is an element of the crime of murder. Under *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), *Mullaney v. Wilbur*, 421 U.S. 684, 697, 95 S.Ct. 1881, 1888, 44 L.Ed.2d 508 (1975), and *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the petitioner contends that the state must bear the burden of proof on every element of the crime charged, including self-defense. *See also Holloway v. McElroy*, 474 F.Supp. 1363, 1369, *aff'd*, 632 F.2d 605 (5th Cir.1980).

The respondent contends, however, that the recent case of *Martin v. Ohio*, —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) softens the rule of *Patterson, Mullaney,* and *Winship,* and allows the state to shift the burden of self-defense to the defendant without constitutional implications. In that case, the petitioner had killed her husband after a heated argument in which he had struck her in the face. The only issue raised at trial was self-defense. The Ohio

state trial judge instructed the jury that the petitioner bore the burden of proving self-defense, and the petitioner was convicted.

The United States Supreme Court upheld this conviction, finding that the state could shift the burden of proof on self-defense in some circumstances. In this case, the jury had been instructed that it must find each of the elements of the crime to have been proved by the state by a reasonable doubt. *Id.*, —— U.S. at ——, 107 S.Ct. at 1101. To constitute murder under Ohio law, the Court found, the petitioner must " 'purposely, and with prior calculation and design, cause the death [of the victim] ...' " *Id.*, (*citing State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166, 168 (1986)). Under Ohio law, the Court concluded, unlawfulness is not an element of the offense which the state must prove by disproving self-defense. *Id.*, —— U.S. at ——, 107 S.Ct. at 1104 (*citing White v. Arn*, 788 F.2d 338, 346–47 (6th Cir.1986); *State v. Morris*, 8 Ohio App.3d 12, 18–19, 455 N.E.2d 1352, 1359–60 (1982)). By shifting the burden of proof in this case, the Court decided that the Ohio State Court had not burdened the petitioner with an element of the offense, because, under Ohio law, self-defense is an affirmative defense, and not part of the crime itself. Although the Court noted that all but two of the states (Ohio and South Carolina) include "unlawfulness" within their definitions of murder, it further noted that there is no constitutional compulsion to do so. The Court therefore stressed that its holding announced no departure from the principles of *Patterson*. *Id.*, —— U.S. at —— n. 1, 107 S.Ct. at 1104 n. 1. In upholding the Ohio conviction, the Court merely stated that the state may shift the burden of proof on self-defense to the defendant, where that issue is not an element of the crime itself. *Id.*

■ Thus, where the state does not include "unlawfulness" in its definition of murder, it is not unconstitutional to shift the burden of proof on self-defense to the petitioner. Conversely, in those states where "unlawfulness" is an element of the crime, it is unconstitutional to shift the burden of proof. The applicability of *Martin* thus depends upon an interpretation of Nevada law.

■ Under Nevada law, "unlawfulness" is an element of the crime of murder. Nevada statutes define murder as the "unlawful killing of a human being, with malice aforethought, either express or implied...." NRS § 200.010. Malice is subsequently defined as "that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." NRS § 200.020. Both the definition of murder and that of malice require the state to show that the killing was done unlawfully. Thus, the state must show that a killing was without any justification, such as self-defense, for it to constitute murder under Nevada law. *See Kelso v. State*, 95 Nev. 37, 588 P.2d 1035, 1039 (1979). In Nevada, therefore, the state must also bear the burden of proof on the issue of self-defense, in that unlawfulness is an element of the crime itself. As noted in *Patterson* and its forebearers, shifting the burden of proof on an element of the crime is erroneous.

It would thus appear that the petition should be granted on this ground. As the *Rose* and *McKenzie* cases make clear, however, the error must still be subjected to a harmless error analysis before the petition may issue. There is no doubt, as noted above, that the first plank of the *McKenzie* test has been fulfilled. The jury did find in this case that the petitioner had committed the relevant predicate facts of the crime.

The second plank of the *McKenzie* test does not lend itself easily to application in this case, however, as the *McKenzie* instruction involved intent, not self-defense. A modified test would require the Court to determine whether no rational juror, after finding that the petitioner had committed the relevant predicate facts could find that the petitioner had committed those acts in the exercise of self-defense. Upon examination of the entire record, it appears that a rational juror could possibly find that the petitioner had acted in self-defense in this case.

First, the Court notes that there is no trial transcript to examine in this case. The court reporter who reported the case died in the 1970s, before petitioner sought any appeal or post-conviction relief. No transcript was ever prepared from that reporter's notes, and none was available to the Court for review. From the available evidence, which consists mostly of the trial judge's testimony at the post-conviction proceeding, it appears that there was some evidence of self-defense put forth by the petitioner. As noted above, the petitioner and the victim had engaged in various crimes in California, involving the theft of various weapons. A dispute had subsequently arisen between the petitioner and the victim about those crimes. It seems that this evidence would tend to support the petitioner's claim of self-defense, in that petitioner may have developed a reasonable fear for his life because of those activities.

In addition, the evidence adduced about the night of the shooting itself tends to support a self-defense theory. The petitioner had ordered the victim to leave the trailer, and the victim had responded by challenging the petitioner to fight with less deadly weapons than firearms. At that point, the eyewitnesses' testimony is that the victim "lunged" at the petitioner. It was at this point that the petitioner fired the fatal shot. Although this evidence does not clearly establish the petitioner's claim of self-defense, the Court does find that a reasonable juror could possibly find self-defense to be present in this case.* The error created by the shifting of the burden of proof on self-defense cannot be said to be harmless beyond a reasonable

doubt, therefore, and the petition should be granted.

IT IS, THEREFORE, HEREBY ORDERED that the petition for a writ of habeas corpus is GRANTED. A writ of habeas corpus shall issue relieving the petitioner of all consequences of his November 14, 1961, conviction for murder in the first degree, including all conditions and restrictions of parole, unless he is retried within ninety (90) days of the date of this order.

IT IS FURTHER ORDERED that this order shall have no effect on the petitioner's incarceration or other consequences resulting from his conviction for attempted burglary.

---

\* The result would be the same under prior Ninth Circuit formulations of the harmless error test. *See Herd v. Kincheloe, supra,* page 799, 800 F.2d at 1528 (question is whether evidence was so dispositive that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption). In this case, the Court cannot say that the evidence regarding the lack of self-defense is so dispositive that it is clear beyond a reasonable doubt that the jury would have found it unnecessary to rely upon the presumption created by the instruction. As noted above, there was some evi-

dence of self-defense at the trial. In view of this evidence, it seems quite probable that a juror would have found it necessary to rely on the presumption created by the instruction in order to decide that self-defense was not present. *See also People v. Garrido,* 752 F.2d 1378, 1380 (9th Cir.1985) (reasonable possibility that the error materially affected the verdict); *United States v. Reed,* 726 F.2d 570, 575 (9th Cir.1984), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984); *United States v. Herbert,* 698 F.2d 981, 987 (9th Cir.1983), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983).