No. 79–6383.   Briggs *v.* Connecticut.   Sup. Ct. Conn. Certiorari denied.

Mr. Justice Marshall, with whom Mr. Justice Brennan joins, dissenting.

The Due Process Clause of the Fourteenth Amendment forbids the use for impeachment purposes of evidence that a defendant remained silent after receiving the *Miranda* warnings at the time of his arrest. *Doyle* v. *Ohio,* 426 U. S. 610 (1976). At petitioner's criminal trial, the prosecutor repeatedly brought before the jury the fact that petitioner had not furnished police officers with his alibi at the time of his arrest. Respondent concedes, and the Supreme Court of Connecticut agreed, that such use of petitioner's postarrest silence violated petitioner's constitutional rights. Nevertheless, the court sustained the conviction, over Justice Bogdanski's dissent, on the ground that the error was harmless beyond a reasonable doubt. I share Justice Bogdanski's "unreasonable" belief that the violation of petitioner's rights was not constitutionally harmless. A finding of harmless error on this record, in my view, can be nothing other than a means of avoiding the requirements of the Constitution in order to sustain the conviction of a defendant the court believed was factually guilty.

Petitioner's defense was that he was in the company of his wife and was nowhere near the scene of the alleged crimes at the time they were committed. Petitioner's wife testified to that effect, and petitioner's testimony corroborated hers. On cross-examination, the prosecutor repeatedly forced petitioner to admit that he had not given his story to the police after receiving *Miranda* warnings. The cross-examination which the Connecticut Supreme Court held to be harmless beyond a reasonable doubt was as follows:

"Q. Did you ever recall telling the police officer that you had gone to court in Stamford on June 8th [the date of the alleged offense]?

"A. Yes.

. . . . .

"Q. Did you ever tell the police officer on June 15th [the date petitioner was arrested] that you were home from 6:45 to 8:55 in the morning?

"[Defense counsel's objection was overruled.]

"A. No, I never told them nothing. Not anything.

"Q. Did you tell them that you were wearing red pants, red T-shirt and blue jacket, white, red and blue sneakers, at 6:15 on June—

"A. I did not tell the police officer nothing.

"Q. Did you ever tell them that you went to court with your wife and Kareen?

"A. Pardon me?

"Q. Did you ever tell them that you went to court with your wife and Kareen—the boy?

"A. Well, I started—I almost started a conversation but I cut it.

"Q. Did you ever tell the police officer what time you arrived at the court in Stamford?

"A. I did not tell the police officer nothing." 179 Conn. 328, 334, n. 1, 426 A. 2d 298, 302, n. 1 (1979).

As if this colloquy did not sufficiently prejudice petitioner before the jury, the prosecutor called a police officer in rebuttal, who testified as follows:

> "Q. And after you advised him of his rights, did he give any information with respect to his whereabouts on June 8th of 1977?
>
> "A. The only information he would tell us was that he was in court on June 8th.
>
> "Q. Did he tell you what time he was in court?
>
> "A. No, he didn't.
>
> "Q. Did he tell you what judge—
>
> "[Defense counsel's objection was overruled.]
>
> "Q. [by the Court] What time did he said [sic] he arrived in court?
>
> "A. He didn't tell me.
>
> "Q. [by the prosecutor] Did you ask him?
>
> "A. Yes.
>
> . . . . .
>
> "Q. Is there anything in your report with respect to the conversation you had with her or with Mr. Briggs?
>
> "A. Yes, there is.
>
> "Q. And may I see that, please?
>
> "A. This is the accused, and what he said. Refused to give a statement." *Id.*, at 334–335, n. 2, 426 A. 2d, at 302, n. 2.

The repeated, cumulative impermissible references to petitioner's constitutionally protected silence were obviously designed to imply that his defense was fabricated. The prosecutor knew very well that the defendant had remained silent after receiving *Miranda* warnings, and his questions were designed to hammer that fact home to the jury.

In holding that these repeated constitutional violations were harmless error, the Connecticut Supreme Court purported to apply a standard that has been adopted by several federal courts, namely, " '[w]hen there is but a single reference at

trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.'" *Id.,* at 336, 426 A. 2d, at 303, quoting *State* v. *Zeko,* 177 Conn. 545, 555, 418 A. 2d 917, 922 (1979). Accord, *Chapman* v. *United States,* 547 F. 2d 1240, 1250 (CA5), cert. denied, 431 U. S. 908 (1977); *Leake* v. *Cox,* 432 F. 2d 982, 984 (CA4 1970). Even on the assumption that this was the appropriate standard, it is plain that the violations in this case were not harmless error. There were multiple references to petitioner's silence; the references were linked—in detail—with petitioner's exculpatory story; and petitioner's alibi defense was not transparently frivolous.* Nevertheless, the court concluded that "the defendant's silence was not so 'highlighted' by the prosecutor as to constitute prejudicial error" and that the comments had not " 'struck at the jugular' of the defendant's defense." 179 Conn., at 337, 426 A. 2d, at 303.

This case exemplifies a disturbing and increasingly widespread trend among some courts to sanction egregious violations of the constitutional rights of criminal defendants by blandly reciting the formula "harmless error" whenever it appears that the accused was factually guilty. Our limited ability to exercise our certiorari jurisdiction prevents us from effectively policing the nullification of constitutional requirements through the abuse of the harmless-error doctrine; nor is it our role to correct such factual errors. Our judicial system relies on conscientious trial and appellate courts to assure that all persons accused of criminal offenses receive the full protections guaranteed them by the Constitution. Because this case exemplifies a serious failure to accept that weighty responsibility, I would grant the petition.

---

*Petitioner's wife and another witness testified to his whereabouts; the fact that the State presented three witnesses who controverted petitioner's alibi defense does not necessarily mean the defense was frivolous.