No. 80–5123. McKENZIE v. MONTANA. Sup. Ct. Mont. Certiorari denied. 

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

On two prior occasions, this Court has vacated decisions of the Supreme Court of Montana in this death penalty case and remanded the case for further consideration. *McKenzie* v. *Montana,* 443 U. S. 903 (1979); *McKenzie* v. *Montana,* 433 U. S. 905 (1977). In both instances, we directed the Supreme Court of Montana to reconsider the case in light of intervening decisions of this Court establishing that due process prohibits a State from placing on a defendant the burden to disprove an element of the offense charged. *McKenzie* v. *Montana,* 443 U. S. 903 (1979) (directing reconsideration in light of *Sandstrom* v. *Montana,* 442 U. S. 510 (1979)); *McKenzie* v. *Montana,* 433 U. S. 905 (1977) (directing re-consideration in light of *Patterson* v. *New York,* 432 U. S. 197 (1977)). On each remand, the state court reaffirmed the conviction and reinstated the death penalty. —— Mont. ——,

608 P. 2d 428 (1980); 177 Mont. 280, 581 P. 2d 1205 (1978). In its most recent decision in this case, the State Supreme Court conceded that the jury instructions unconstitutionally shifted to petitioner the burden to disprove that he had the criminal intent necessary to support conviction. —— Mont., at ——, 608 P. 2d, at 457–458. The court nonetheless avoided granting petitioner a new trial by deeming this constitutional violation "harmless error." *Id.*, at ——, 608 P. 2d, at 458–459. A state court's analysis of harmless error in a typical case may not present a question worthy of full review by this Court, yet, where, as here, the death penalty is the result, close scrutiny is required. Because I find the court's analysis of harmless error lacking of evenhanded treatment, I dissent from this Court's denial of certiorari.

Petitioner was charged with two counts of deliberate homicide, two counts of aggravated kidnaping, one count of sexual intercourse without consent, and two counts of aggravated assault, all arising from the death of one woman. A major element in petitioner's defense was that he was incapable of "knowingly" or "purposely" committing the homicide. Petitioner and the prosecutor produced conflicting psychiatric and psychological testimony at trial concerning petitioner's ability to understand the criminal nature of his conduct and to conform his conduct to the requirements of law. Although petitioner's capacity to form the required criminal intent was thus put directly in issue, over petitioner's specific objection, the judge repeatedly directed the jury that "the law also presumes that a person intends the ordinary consequences of his voluntary act" and that "an unlawful act was done with an unlawful intent." [1] The trial court essentially instructed the

---

[1] Instruction 31 gave general directions on methods of proof about mental state. It stated that "the law expressly directs the jury to reason: That an unlawful act was done with an unlawful intent and also that a person is presumed to intend the ordinary consequences of his voluntary act," but Instruction 32 noted that a "particular purpose" may be inferred but not assumed. App. to Pet. for Cert. 20g–21g. Instruction 33

jury that it could presume the necessary criminal intent if it found petitioner had committed the acts charged. Petitioner was convicted of deliberate homicide and aggravated kidnaping, and sentenced to death.

In *Sandstrom* v. *Montana, supra,* we explicitly held that instructions of the kind challenged by petitioner violate due process because they shift to the defendant the burden to persuade the jury that he lacked the requisite criminal intent. On remand of the instant case in light of *Sandstrom,* the Montana court agreed that the challenged instructions unconstitutionally shifted the burden of proving the intent element of the crime from the State to the defendant. —— Mont., at ——, 608 P. 2d, at 457. The court, however, reasoned that not all such constitutional errors are prejudicial[2]

concerned the method of proof applicable to the offense of deliberate homicide. That instruction directed that if the jury found that petitioner committed an illegal act on the victim, "the law presumes that an unlawful act was done with an unlawful intent; that is, the law expressly directs you to reason from such unlawful act that the defendant acted with an unlawful intent, or purpose." *Id.,* at 22g. Instruction 35 described the method of proof applicable to kidnaping. It provided that because no particular purpose was required as an element of the offense, the requisite mental state could be established presumptively. Thus, if the jury found that petitioner restrained the victim "either by secreting her in a place of isolation, or by using physical force, or by threatening to use physical force to hold her, the law presumes that he acted therein with unlawful intent, purpose or knowledge, and expressly directs you to so reason." *Id.,* at 26g–27g. Instruction 37 provided that proof of the mental state requisite for sexual intercourse without consent "can be made by presumption." *Id.,* at 28g. Similarly, Instruction 38 specified that the mental state necessary for aggravated assault could be proved by the presumption that " '[a]n unlawful act was done with an unlawful intent, and the legal presumption that a person is presumed to intend the ordinary consequences of his voluntary act' can be used to prove the mental state of knowingly." *Id.,* at 30g.

[2] This Court has not decided whether it can ever be harmless to instruct a jury that it may presume criminal intent from the fact of the criminal act. See *Sandstrom* v. *Montana,* 442 U. S. 510, 526–527 (1979) (remanding on that issue).

and concluded that this Court has never mandated which of three possible standards for evaluating the harmlessness of a constitutional error [3] must be used. The court then selected the standard that permits a court to sustain the conviction despite the constitutional error where there is "overwhelming evidence" of guilt. *Id.*, at ——, 608 P. 2d, at 458. Finally, the court found such overwhelming evidence was present in this case.

But what evidence did the court find sufficient to overcome the constitutional error of directing the jury to presume the presence of the requisite criminal intent from the nature of the acts committed? The Montana court itself relied solely on "the vicious manner in which the crimes were committed" in concluding that petitioner "purposely and knowingly intended" to commit the crimes. *Id.*, at ——, 608 P. 2d, at 459. I cannot help but be shocked that in taking this approach, the Montana court simply applied the forbidden presumption. In so doing, the court neglected to perform its task on review: it failed to examine whether the disapproved instructions could have infected the jury verdict. Instead, the court served as another factfinder, again impermissibly placing the burden on petitioner to disprove that the nature of his acts established the requisite criminal intent. It surely cannot be that a verdict following an unconstitutional instruction permitting the jury to presume criminal intent can be im-

---

[3] The court reasoned:

"At least three definable approaches appear in the United States Supreme Court cases: (1) Focusing on the erroneously admitted evidence or other constitutional error to determine whether it might have contributed to the conviction[,] e. g., *Fahy* v. *Connecticut* (1963), 375 U. S. 85 . . . ; (2) excluding the constitutional infirmity where overwhelming evidence supports the conviction [,] e. g., *Milton* v. *Wainwright* (1972), 407 U. S. 371 . . . ; (3) determining whether the tainted evidence is merely cumulative or duplicates properly admitted evidence[,] e. g., *Harrington* v. *California* (1969), 395 U. S. 250 . . . ." —— Mont., at ——, 608 P. 2d, at 458.

munized from reversal because the reviewing court also impermissibly presumes criminal intent.

This result was perhaps inevitable once the state court selected the "overwhelming evidence" of guilt standard to analyze whether the constitutional error was harmless. For whatever value that standard may have in reviewing a verdict following introduction of evidence obtained in violation of constitutional guarantees, see, e. g., *Milton* v. *Wainwright,* 407 U. S. 371 (1972), use of the standard actually precludes effective review of the prejudicial impact of unconstitutional jury instructions.[4] Where isolated, tainted evidence is at issue, the reviewing court may exclude that evidence from its assessment of whether the remaining evidence supports the conviction. But where the constitutional error occurred in the jury instructions, no isolated portion of the record can be eliminated from the judicial assessment. Nor can the effect of the instructions be evaluated by examining the evidence alone, and ignoring the unconstitutional instructions. For the precise issue in such cases is the manner in which the jury could have assessed the evidence as a whole, not the importance of any particular piece of evidence to sustain the verdict. In selecting the "overwhelming evidence" standard on the theory that "an appellate court should view the case as a whole in assessing harmless or prejudicial error," —— Mont., at ——, 608 P. 2d, at 458, the state court neglected to review the possible effect of the unconstitutional instructions on the jury's verdict.

The possibility that a constitutional error in jury instructions was harmless must be evaluated on the premise that the jury acted lawfully and reasonably followed the erroneous

---

[4] The Montana court acknowledged "criticism of this standard by textwriters and legal commentators." *Id.,* at ——, 608 P. 2d, at 458. See, *e. g.,* Field, Assessing the Harmlessness of Federal Constitutional Error— A Process in Need of a Rationale, 125 U. Pa. L. Rev. 15, 32–36 (1976).

instruction.[5] Then the court must ask whether the defective instruction may have contributed to the jury verdict.[6] And, before finding the error harmless, the reviewing court must be convinced beyond a reasonable doubt that the error did not so contribute. *Chapman* v. *California,* 386 U. S. 18 (1967). Indeed, on remand in *State* v. *Sandstrom,* —— Mont. ——, ——, 603 P. 2d 244, 245 (1979), the Supreme Court of Montana followed just this analysis. We had remanded *Sandstrom* for consideration of questions such as whether the use of the disapproved instruction was harmless error in that case, and whether such error could ever be harmless. *Sandstrom* v. *Montana,* 442 U. S., at 526–527. In response, the State Supreme Court correctly applied *Chapman* in reasoning that it could find harmless error only upon concluding:

> "[T]he offensive instruction could not reasonably have contributed to the jury verdict. In considering the instruction, and the fact that intent was the main issue in

---

[5] See generally R. Traynor, The Riddle of Harmless Error 73–74 (1970).

[6] Before this Court, Montana argues that even if petitioner's conviction for deliberate homicide resulted from the unconstitutional presumption of intent, his conviction for aggravated kidnaping is untainted by the error. Montana claims that because this is the case, the death penalty can stand, as only one sentence was imposed, despite petitioner's conviction on both the homicide and kidnaping counts. This argument, which was never adopted by the state court, is fatally flawed because instructions on the kidnaping charge also included the disapproved presumption of criminal intent. As Montana itself acknowledges, "the jury was then informed that they could employ the *Sandstrom* presumption to find that [kidnaping] was done 'purposely' or 'knowingly.'" Brief in Opposition 7. Montana argues that any error from this instruction was cured by the additional instructions on aggravated kidnaping. These instructions directed that after finding that petitioner committed the kidnaping, the jury could infer, but not presume, he also had particular criminal purposes to inflict bodily injury, to terrorize, or to facilitate the commission of other crimes. These additional requirements could not, however, eliminate the role of the forbidden instruction in the initial finding of a kidnaping.

the District Court trial, we cannot make that assertion. The erroneous instruction goes to a vital element of the proof of the crime, namely the intent of the defendant Sandstrom in committing the homicide. If the jury followed the instruction, it could have presumed the intent without proof beyond a reasonable doubt." —— Mont., at ——, 603 P. 2d, at 245.

Therefore, the court ordered a new trial for Sandstrom. The Montana court subsequently applied the same reasoning in *State* v. *Hamilton,* —— Mont. ——, ——, 605 P. 2d 1121, 1132 (1980) (appellate court must determine impact of instruction upon a reasonable jury).

It appears that only in petitioner's case is the Montana court unwilling to apply this analysis.[7] This seems to be yet another case in which a court sanctions "egregious violations of the constitutional rights of criminal defendants by blandly reciting the formula 'harmless error.'" *Briggs* v. *Connecticut,* 447 U. S. 912, 915 (1980) (MARSHALL, J., joined by BRENNAN, J., dissenting). However unpleasant the facts of this or other cases may be, the courts are obligated to protect the constitutional rights of the defendant. Due to concern that petitioner's rights have not been preserved, this Court has already remanded this case twice. I can understand the Court's reluctance to entertain this case yet again, for we presume that lower courts adhere to the purposes of remands from this Court. Yet the Montana court has failed to fulfill its obligation to carry out the mandate of our decisions.[8] There-

---

[7] Petitioner is also the only person on whom Montana imposed the death sentence under a statute enacted in 1973 before it was amended to provide different procedures for deliberate homicide and aggravated kidnaping, the offenses relevant here. See Mont. Rev. Codes Ann. § 94-5-304 (Supp. 1974), Mont. Code Ann. §§ 45-2-101 (52), 46-18-101, 46-18-111 to 46-18-112 (1979).

[8] For this reason, this case seems a particularly apt one for seeking federal habeas corpus relief. The dissenting judge in the Montana court

fore, I would grant certiorari and set the case for plenary consideration.

I also adhere to my view that the death penalty is, under all circumstances, a cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Furman* v. *Georgia*, 408 U. S. 238, 314–371 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia*, 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting); *Lockett* v. *Ohio*, 438 U. S. 586, 619–621 (1978) (MARSHALL, J., concurring in judgment), and on that basis alone I would grant certiorari and vacate the death sentence in this case.

---

found the majority's decision unsupportable. — Mont., at —, —, —, 608 P. 2d, at 459, 462, 465 (Shea, J., dissenting).