805 P.2d 1223

Harold C. BURGESS, Maxine Hazen; La Ray Easterday and Janet Easterday, husband and wife; Jim Fowler, Jr. and Robin Fowler, husband and wife; Vernon L. Herzinger and Betty Jean Herzinger, husband and wife, Larry D. Olsen and Sherrel E. Olsen, husband and wife, individually, and d/b/a Miracle Hot Springs; Le Grand Nelson and Alice Nelson, husband and wife; Jerry Olsen and Sheryl Olsen, husband and wife; Ken Olsen and Jean Olsen, husband and wife; Floyd Olsen and Eloise Olsen, husband and wife; L.J. Rice & Sons, Inc., a corporation; Robert W. Ring and June Ring, husband and wife; Dale M. Wright; Magic Water Company, a corporation; Lenard Easterday and Lorene J. Easterday, husband and wife; Elden Easterday and Annita Easterday, husband and wife; Richard L. Kerbs and Pat Kerbs, husband and wife; James M. Feeney and Maureen Feeney, husband and wife; William Feeney and Belinda C. Feeney, husband and wife; Dortha Handy; Donald A. Jensen and Mary Jensen, husband and wife; John F. Jensen and Anna Dee Jensen, husband and wife; Richard S. Kerbs; Richard E. Kopp and Beatrice Kopp, husband and wife; Rick C. Parks and Sharon Parks, husband and wife; Joseph I. Sherwood and Helen B. Sherwood, husband and wife; Mutual of Enumclaw, a corporation; Jaynette Connolly; and John Does I through X, Plaintiffs–Respondents–Cross Appellants,

v.

SALMON RIVER CANAL COMPANY, LTD., an Idaho corporation, Defendant–Third Party Plaintiff–Appellant, Cross Respondent,

and

Buhl Highway District, a body politic and a public corporation of the State of Idaho; and Twin Falls Highway District, a body politic and a public corporation of the State of Idaho, Third Party Defendants–Counterclaimants–Respondents–Cross Appellants.

No. 18209.

Supreme Court of Idaho, Twin Falls, November 1990 Term.

Feb. 4, 1991.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for defendant-third party plaintiff-appellant, cross respondent Salmon River Canal Co., Lloyd J. Webb, argued.

Hepworth, Nungester & Lezamiz, Twin Falls, for plaintiffs-respondents-cross appellants Burgess, et al., John C. Hepworth and John T. Lezamiz, argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for plaintiff-respondent-cross appellant Buhl Highway Dist., Louis F. Racine, Jr., argued.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for plaintiff-respondent-cross appellant Twin Falls Highway Dist., J. Robert Alexander, argued.

McDEVITT, Justice.

This is an action by the plaintiffs to recover damages due to the defendant's alleged negligence in flooding the plaintiffs' various properties. Plaintiffs alleged that the defendant was negligent in its release of water from the Salmon

Falls Creek Reservoir. Salmon River Canal Company sought relief from the Buhl Highway District and the Twin Falls Highway District (the highway districts) alleging the flooding was caused by their negligent design and construction of a highway crossing.[1] The case was bifurcated and trial was held to determine liability only; the issue of damages was reserved until the liability issues were determined. This appeal deals only with the liability portion of plaintiffs' claims.

Salmon River Canal Company (SRCC) was organized in 1908 as a Carey Act nonprofit operating company. SRCC operates an irrigation dam on the Salmon Falls Creek southwest of Twin Falls, Idaho, near the Idaho/Nevada border. Salmon Falls Dam spans the width of the valley and impounds all water flowing into the valley. SRCC then delivers water to its members/shareholders through an irrigation canal system. The dam and reservoir are both under the exclusive control of SRCC. The dam was designed solely for irrigation purposes and no storage space has been dedicated to any other purpose.

The dam has altered the normal stream flow of Salmon Falls Creek. Since the construction of the dam was completed in 1911, the only water that flows past the dam into the natural stream bed is water that seeps through the rocky abutments around the dam. This seepage causes a fairly constant stream flow of about 25 cubic feet per second (cfs) in the natural stream bed. This stream travels approximately 53 miles and empties into the Snake River.

The plaintiffs are property owners situated downstream from the Salmon Falls Dam, between Balanced Rock Crossing and the Snake River. Some plaintiffs own bare land, others own homes, and others own farms with irrigation pumps on Salmon Falls Creek. Plaintiff Magic Water Company is an irrigation district that pumps water out of Salmon Falls Creek and delivers it to its members/shareholders for irrigation purposes. Plaintiff MEKA operates a pumping station on Salmon Falls Creek. Plaintiffs Larry and Sherrel Olsen own and operate a business called Miracle Hot Springs, located on Salmon Falls Creek near the Snake River.

The highway districts constructed and maintained the Balanced Rock Crossing, a highway crossing over Salmon Falls Creek. This crossing is situated northwest of Castleford, Idaho, approximately 38 miles downstream from the Salmon Falls Dam. In 1984, the crossing consisted of a 10 foot diameter steel culvert covered by 50 feet of earthen fill. The crossing obtains its name from the fact that the road leads to the Balanced Rock geological formation.

The winter of 1983–84 was an exceptionally wet winter. Both snowfall and the water content in the snow greatly exceeded normal levels. United States Government projections indicated more water remained in the watershed than the Salmon Falls Dam could hold. Measurements of stream flows into the reservoir were much higher than normal and snow that usually melted in March did not melt until April and May. In January, 1984, the reservoir contained twice the normal amount of water. These factors, among others, indicated that this would be the first year that SRCC would have to release water into the original stream bed.

Some of the plaintiffs contacted SRCC about releasing water as early as April in order to avoid the possibility of flooding. SRCC refused to release water that early and took the position that it could wait and release as much water downstream into the original channel as necessary to avoid overtopping of the reservoir. SRCC adopted a plan to allow the reservoir to fill to the 75 foot level, 5 feet below maximum capacity, before releasing water. SRCC realized that this probably would cause damage to

---

1. Both Buhl Highway District and Twin Falls Highway District maintain the Balanced Rock Crossing as Salmon Falls Creek is the boundary line between the two districts. Hence, each district maintains the half of the crossing that lies within their district.

the downstream property owners, but concluded that any such excess water was not its concern.

On May 11, SRCC began spilling water. The first day's release averaged between 400 and 500 cfs; on May 13 the average was 200 cfs; on May 14 the average was between 800 and 1,000 cfs; on May 15 the average was 1,700 cfs; and on May 16 and 17 SRCC released an average of approximately 1,800 cfs of water downstream. This water was to travel downstream, through the culvert at the Balanced Rock Crossing, and then on to the Snake River.

The water flowed unimpeded until it reached the Balanced Rock Crossing. The 10 foot culvert had insufficient carrying capacity, so when the water released from Salmon Falls Dam reached the crossing, the water backed up, with the crossing acting as an earthen dam. As the water accumulated behind the crossing, it saturated and eroded the fill. The highway district took measures to cut a channel in the crossing so the water could pass through, but the crossing became too saturated and it collapsed on May 16, 1984, sending 7,500 cfs of water downstream, washing out the irrigation pumps and damaging the homes and property of the plaintiffs. After the crossing collapsed, during the period of May 20 through 22, 1984, SRCC increased the flow to over 3,000 cfs. This water again flooded the plaintiffs, many of whom had already begun repairing the damage from the first deluge.

In their complaint, the plaintiffs alleged that SRCC had a duty to prevent the flooding of their property. They further alleged that the actions of SRCC in impounding water and then releasing it in such great quantities amounted to an intentional invasion of their property. Also included in the plaintiffs' complaint were causes of action based on strict liability and negligence per se.

For purposes of aiding in summary judgment proceedings, the parties entered into a stipulation of facts. The parties stipulated that the rate of spill never exceeded the rate of water flowing into the reservoir. Because of this fact, SRCC asserted it could not be held liable. The plaintiffs asserted that by diverting the stream over a period of 73 years, SRCC had assumed a duty of flood control and was liable for the damages sustained.

The trial court granted summary judgment to plaintiffs on this issue. The trial court found that the long history of diverting the water without spilling water into the original channel demonstrated an assumption of the duty of flood control. By finding this flood control duty, the trial court determined that SRCC could be held liable for the negligent breach of that duty. The trial court then properly dismissed the theories of strict liability, res ipsa loquitur, negligence per se, and a theory of implied duty of flood control due to the State's grant of authority to construct and operate the dam.

In the summary judgment proceedings, the trial court determined that the highway districts were immune from liability pursuant to I.C. § 6–904. The trial court found that the plan for reconstruction was approved in advance by the highway districts and that it complied with engineering standards in effect at the time of its reconstruction. The trial court also found that even if the crossing did not meet engineering standards, the decision not to comply with engineering standards was based on budgetary concerns. Thus, this decision involved planning rather than operational activity and I.C. § 6–904(1) also provided immunity for the highway districts.

Based upon the finding that SRCC had a duty of flood control, the trial court proceeded to enter a series of orders limiting the evidence SRCC could introduce at trial. SRCC was barred from introducing evidence as to prior years' dam inflow experience, evidence as to what the stream flow profile would have been had the dam not been in place, and evidence that the 10–foot road culvert was plugged with debris and rocks. The trial court then instructed the jury that SRCC had a duty of flood control.

The jury returned a verdict apportioning liability at 20% to each individual plaintiff, 40% to SRCC and 40% to the highway

districts.[2] Upon entry of the judgment, the trial court amended the jury verdict by determining that since the highway districts were immune, the jury's finding of negligence on their part must be borne by SRCC. We reverse and remand for a new trial.

The principal issues that we must deal with on appeal are: (1) the duty, if any, that SRCC owed to the downstream property owners; and, (2) the governmental immunity of the highway districts.

## SUMMARY JUDGMENT

■ In order to address what duty of care, if any, SRCC owed the downstream property owners, we must first turn our attention to the trial court's summary judgment finding that SRCC had a duty of flood control. The trial court concluded that by constructing the dam, SRCC had created a "new natural condition" and had a duty not to negligently release water from the dam. The court went on to find that by impounding the total flow of Salmon Falls Creek for over 70 years, SRCC had voluntarily assumed the duty of flood control. These findings are erroneous.

The trial court applied *Kunz v. Utah Power & Light Co.*, 526 F.2d 500 (9th Cir. 1975), and determined that SRCC had voluntarily assumed the duty of flood control. Specifically, the trial court found that for over 70 years, SRCC had voluntarily captured and impounded all water flowing into the reservoir and diverted this water to its members/shareholders for irrigation purposes. The trial court concluded that this diversion of all of the flow of Salmon Falls Creek demonstrated the voluntary assumption of the duty of flood control by SRCC. This finding of a duty of flood control was error as *Kunz* is not applicable to this case.

*Kunz* involved Utah Power & Light Co. who operates the Stewart Dam on the Bear River. Utah Power operates the dam pursuant to federal statutes, a court decree, and the Bear River Compact. This compact authorized Utah Power to operate the

dam for two purposes. First, the dam is to be used for the storage of water for irrigation purposes, and second, for the generation of hydroelectric power. In addition to these purposes, since the construction of the Stewart Dam in 1917, Utah Power has pursued a course of conduct of maximizing the benefits to Utah Power, while minimizing the flood risks to the downstream landowners. Employees of Utah Power had tried to control water flows by maintaining sufficient capacity in the reservoir to handle spring flows in order to eliminate or minimize flooding downstream. In addition, Utah Power employees had not only discussed but had coordinated water-release and operational procedures with the downstream property owners. These acts clearly demonstrated the voluntary assumption of the duty of flood control by Utah Power.

Those facts do not exist in this case. SRCC constructed the Salmon Falls Dam for irrigation purposes only. No space had ever been dedicated for flood control purposes. SRCC had never considered flood control in their decisions concerning operation of the dam. There was no testimony nor evidence that SRCC had ever tried to control flooding of the downstream property owners or to manage the stream flow. The only evidence the trial court found to support the contention of the voluntary assumption of the burden was the fact that SRCC intentionally diverted Salmon Falls Creek and impounded all waters, including flood waters, for 73 years without ever releasing any water into the original channel. Diversion of a stream by itself without other overt actions does not indicate a voluntary assumption of a flood control duty. To hold as the trial court did would impose a duty of flood control upon every dam operator in this state. The law does not impose this duty and we are unwilling to do so. A voluntary assumption of the duty of flood control requires more overt and intentional acts than mere diversion of a stream.

---

**2.** The jury apportioned the liability equally between the highway districts at 50% to each district.

## DUTY OF CARE

■ We now consider what duty of care, if any, SRCC owed to the downstream property owners. In order to ascertain the applicable duty of care, we must determine: (1) whether SRCC had a right to discharge water into the original creek bed; and (2) the limitations of this right.

In order to determine whether SRCC had a right to discharge water into Salmon Falls Creek, we must find that Salmon Falls Creek is a natural watercourse. If it is no longer a natural watercourse, SRCC could not discharge waters into it. *Dayley v. City of Burley*, 96 Idaho 101, 524 P.2d 1073 (1974).

This Court has defined a natural watercourse or drain as:

[A] stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water.

*Loosli v. Heseman*, 66 Idaho 469, 481, 162 P.2d 393, 398 (1945).

Applying this definition to the facts of this case, it is evident that Salmon Falls Creek meets the criteria for a natural watercourse. Before the Salmon Falls Dam was completed in 1911, Salmon Falls Creek flowed unimpeded to the Snake River. The dam altered the flow of the creek but did not alter the original channel below the dam. Evidence showed that approximately 25 cfs seeps through the abutments of the dam into the original channel. As this water flows to the Snake River, it is joined by water from Cedar Creek, Devil Creek, Deep Creek, and other smaller streams. This combination of waters causes a substantial and constant flow of water in the original creek bed that allows pump operators to operate pumping stations on Salmon Falls Creek and use the water for irrigation purposes. Therefore, it is evident that there exists a definite and constant flowing stream of water within the original channel. Since Salmon Falls Creek meets this criteria of a natural watercourse, SRCC had the right to discharge water into the original channel.

■ Next, we must determine the limits of the right to discharge water into a natural stream channel. In *Dayley v. City of Burley*, this Court reaffirmed our adherence to the civil law rule that recognizes a servitude of natural drainage between adjoining landowners. This rule requires a lower landowner to accept the surface waters that naturally drain from the upper landowner. *See also, Loosli v. Heseman*, 66 Idaho 469, 162 P.2d 393 (1945).

While we recognize that this servitude which is placed upon a lower landowner requires the landowner to bear the burden of natural drainage waters, this servitude cannot be augmented or made more burdensome by the upper landowner. *Loosli v. Heseman*, 66 Idaho at 477, 162 P.2d at 397. Thus, the upper landowner cannot artificially accumulate the water only to release it upon the lower landowner in an unnatural concentration. *Teeter v. Nampa & Meridian Irrigation Dist.*, 19 Idaho 355, 114 P. 8 (1911).

In addition to the duty of an upper landowner not to accumulate water and discharge it upon a lower landowner in "unnatural concentrations," *Id.*, this Court in *Willson v. Boise City*, 20 Idaho 133, 117 P. 115 (1911), held that the operator of a dam which diverts water from the original channel into an artificial channel has a duty of reasonable management and control of the diverted water in order not to damage other landowners. In this case, we conclude that there is a similar duty of reasonableness upon the operator of a dam who, once having impeded the flow of a natural stream by impounding it in a reservoir, thereby exercising control of the flow of the water in the stream, subsequently discharges water from the reservoir into the natural stream bed. This duty of reasonableness in the operation of a dam and the discharge of water from it is consistent with the duty of reasonableness which we have placed upon parties in other contexts. We have required entities to exercise rea-

sonable and ordinary care in the construction, operation, and maintenance of artificial diversion channels. *Albrethson v. Carey Valley Reservoir Co.*, 67 Idaho 529, 186 P.2d 853 (1947); *Stephenson v. Pioneer Irrigation District*, 49 Idaho 189, 288 P. 421 (1930); *Burt v. Farmers' Co-operative Irr. Co., Ltd.*, 30 Idaho 752, 168 P. 1078 (1917). We have required individuals to exercise reasonableness in altering or barricading a natural stream channel in order to prevent damage to other riparian landowners. *Milbert v. Carl Carbon, Inc.*, 89 Idaho 471, 406 P.2d 113 (1965); *Chandler v. Drainage Dist. No. 2*, 68 Idaho 42, 187 P.2d 971 (1947); *Fischer v. Davis*, 19 Idaho 493, 116 P. 412 (1911). We have held entities under a duty of reasonable and ordinary care in using the natural servitude for drainage. *Dayley v. City of Burley*, 96 Idaho 101, 524 P.2d 1073 (1974); *Loosli v. Heseman*, 66 Idaho 469, 162 P.2d 393 (1945); *Teeter v. Nampa & Meridian Irrigation Dist.*, 19 Idaho 355, 114 P. 8 (1911).

In order to determine whether the release of water stored in a reservoir is reasonable, the trier of fact is free to consider all of the factors that bear upon the operation of the dam and the discharge of water. The first and most important factor to be considered in determining what is reasonable is the purpose or purposes for which the dam was constructed. In this case, the dam was constructed for storage of water for irrigation purposes. There are, however, other factors which a dam operator may have to consider, such as recreation, fish and wildlife, flood control, and power generation. *See Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 792 P.2d 926 (1990). The jury should be instructed that, while the operator of the dam must give primary consideration to the primary purpose for which the dam was constructed, it must also give some consideration to other factors in the operation of the dam and the discharge therefrom. The jury in this case was not instructed according to this principle, but was only instructed that the operator of the dam, SRCC, had a duty of flood control. The instructions given the jury did not accurately state the

law, and accordingly a new trial is necessary.

SRCC asserts that since it did not release any more water than was flowing into the reservoir, that it cannot be held liable for any flooding. The determination of reasonable conduct cannot be turned into a simple mathematical test. The amount of water flowing into a reservoir and the amount released from the reservoir is but one factor to be used to determine reasonable conduct. The fact that the amount of water released does not exceed the amount flowing into the reservoir does not *per se* establish reasonable conduct.

All relevant factors of reasonableness must be weighed together giving emphasis to the purpose or purposes for which the dam was constructed. It is not possible for this Court to enumerate all factors to be considered, nor their relative importance. The determination of reasonable conduct is a factual determination. The trier of fact determines the conduct of a reasonable person *"under circumstances similar to those shown by the evidence." Messmer v. Ker*, 96 Idaho 75, 79, 524 P.2d 536, 540 (1974), (emphasis in original).

Thus, we conclude that SRCC was under a duty of reasonable and ordinary care in controlling Salmon Falls Creek. SRCC can be held liable for the damages flowing from the breach of this duty.

We next discuss whether the trial court's instruction imposing a duty of flood control upon SRCC constitutes prejudicial error which would require reversal. Error will not be presumed on appeal, it must be clearly shown. *Dawson v. Mead*, 98 Idaho 1, 557 P.2d 595 (1976). The burden is upon the appellant to show prejudicial error. *Carpenter v. Double R Cattle Co., Inc.*, 108 Idaho 602, 701 P.2d 222 (1985); *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). Error is prejudicial only if it could have affected or did affect the outcome of the trial. *Morrison v. Pierce*, 47 Idaho 430, 276 P. 306 (1929); I.R.C.P. 61.

After having determined at summary judgment that SRCC had a duty of

flood control, the trial court prohibited SRCC from introducing evidence as to prior years' operating experience, a possible plugging of the culvert, evidence as to the natural carrying capacity of Salmon Falls Creek, and evidence as to what the Salmon Falls Creek flow would have been in 1984 without the dam. These evidentiary rulings were erroneous. Not only was this evidence critical in determining reasonable conduct, this evidence also had a bearing upon the issue of the proximate cause of the plaintiffs' damages.

The trial court then instructed the jury that SRCC had a duty of flood control. Both the exclusion of evidence and the jury instructions imposing a duty of flood control were erroneous. These rulings imposed an onerous and overburdensome duty upon the defendant that severely affected the jury's verdict. If SRCC would have been allowed to present the excluded evidence to the jury, and had the jury been instructed properly, the jury might have reached a different conclusion. While each of these errors may be harmless in and of themselves, cumulatively they prejudiced the defendant's right to a fair trial. *State v. McKenzie*, 186 Mont. 481, 608 P.2d 428, *cert. denied*, 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507 (1980); *State v. Baker*, 224 Kan. 474, 580 P.2d 1345 (1978); *State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984); *State v. Coe*, 101 Wash.2d 772, 684 P.2d 668 (1984); *State v. Campbell*, 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). The only remedy available to correct this error is to reverse and remand for a new trial.

### IDAHO CODE § 6–904 GOVERNMENTAL IMMUNITY

The trial court determined that the highway districts were immune pursuant to I.C.§ 6–904(8)³ which grants immunity for claims arising from: (1) a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property; (2) prepared in substantial

conformance with engineering or design standards in effect at the time of preparation of the design or design; and (3) approved in advance of the construction by the legislative body exercising discretion to give authority for such approval. All three of these requirements must be met before a governmental entity is granted immunity. *Bingham v. Idaho Dept. of Transp.*, 117 Idaho 147, 786 P.2d 538 (1989).

As to the last two requirements of this statute, the trial court determined on the basis of the affidavits that the crossing was designed in conformance with the engineering standards in effect in 1969, and granted summary judgment in the highway districts' favor. This finding is erroneous.

Upon a motion for summary judgment, all facts and inferences must be drawn in favor of the non-moving party. *Meridian Bowling Lanes, Inc. v. Meridian Athletic Assoc. Inc.*, 105 Idaho 509, 670 P.2d 1294 (1983). Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *Reis v. Cox*, 104 Idaho 434, 660 P.2d 46 (1982); I.R.C.P. 56(c). The standard to be used by this Court when reviewing a motion for summary judgment is the same. *Meridian Bowling Lanes, Inc. v. Meridian Athletic Assoc. Inc.*, 105 Idaho at 512, 670 P.2d at 1297. We find that material issues of fact did exist and summary judgment was improper.

The affidavit of the highway districts' expert witness stated that the crossing should have been designed to handle a 50-year peak water flow (a flow of approximately 2,800 cfs). The expert witness for SRCC stated in his affidavit that the crossing should have been constructed to handle a flow of 3,500 cfs. Both experts used figures from a United States Government report published in 1984. Both experts agreed that the 10 foot culvert in place at the Balanced Rock Crossing was capable of carrying a flow of about 1,100 cfs with a 5

**3.** This section was amended by an act of April 4, 1988, ch. 324, 1988 Idaho Sess. Laws 983 (as amended at I.C. § 6–904(7)).

foot "head"[4] and could carry a peak flow of 2,200 cfs with a 50 foot "head."

Neither expert stated what the applicable engineering standard was at the time of construction in 1969. The only fact that the trial court could rely on was the unsubstantiated conclusion by the highway districts' expert that the crossing complied with engineering standards as 2,200 cfs was within the 50 year peak standard. This reliance was erroneous for three reasons. First, neither expert testified with specificity as to what the applicable engineering standard was in 1969. Second, for the culvert to be within the standard of 2,800 cfs, it should have a carrying capacity that meets or exceeds the 50 year peak of 2,800 cfs; the actual capacity of 2,200 cfs is less than 2,800 cfs, hence, it does not meet or exceed this standard. And lastly, there was substantial evidence that the crossing could not handle a 50 foot head for more than a short time before the earthen fill would become saturated and would collapse. The use of the figure of 2,200 cfs is unrealistic as it is only a theoretical momentary carrying capacity.

The trial court also determined that the highway districts approved the construction in advance. There was insufficient evidence to support this finding. The only evidence proffered by the highway districts were two documents attached to the affidavit of their expert witness. One document was a letter written by the expert witness dated June 21, 1969, and addressed to the Buhl Highway District offering an estimate of the cost to replace the crossing after it was washed out in 1969. The second document was the minutes of a meeting of the Board of Commissioners of the Buhl Highway District dated July 3, 1969. The minutes mention that the crossing had been washed out by a flash flood and also discussed possible sources of financing to reconstruct the crossing. Nothing is mentioned of a specific plan of reconstruction, just that work is progressing on the reconstruction. No evidence was introduced that Twin Falls Highway District approved the plan of reconstruction. These two documents are insufficient to show that the plan of construction was approved *prior* to the reconstruction of the crossing in 1969.

The highway districts urge, and the trial court agreed, that if they are not immune pursuant to I.C. § 6–904(8), that the reconstruction of the crossing to existing engineering standards was a discretionary function and immunity is provided by I.C. § 6–904(1), which supplies immunity for discretionary decisions made within the scope of employment. The highway districts contend that they were without sufficient funds to reconstruct the crossing in 1969 to applicable engineering standards, so it was within their discretion to build to a lesser standard. Such a decision was not available to them. The decision to comply with engineering standards is not a discretionary act. *Wellard v. Idaho Dept. of Transp.*, 118 Idaho 852, 801 P.2d 561 (1990). Engineering standards must be followed to insure the safety of the citizens of this state.

We hold that the trial court erred in granting summary judgment finding the highway districts immune from liability. We reverse and remand for proceedings consistent with this opinion.

## OTHER ISSUES

The plaintiffs appeal the finding of comparative negligence. The plaintiffs assert that because the jury found the defendant's conduct to be intentional, comparative negligence cannot be used to offset the defendant's liability. The special verdict returned by the jury included the following question:

QUESTION NO. 1: Did the Defendant Salmon River Canal Company intentionally release water in an unreasonable manner, which acts were the proximate cause of the Plaintiff's damages?

The jury's answer to this question was "Yes." The jury then found the plaintiffs to each be comparatively negligent and apportioned liability to each individual plaintiff at 20%. The plaintiffs urge that because the defendant's conduct was inten-

---

**4.** Meaning a level of water 5 feet above the mouth of the culvert.

tional, the plaintiffs' alleged negligence cannot be used to decrease the defendant's liability. For this proposition the plaintiffs cite *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977), *overruled on other grounds, Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981), and *Weitzel v. Jukich*, 73 Idaho 301, 251 P.2d 542 (1952). While these cases do stand for the proposition that contributory negligence cannot be used as a defense to intentional conduct, the cases cited by the plaintiffs are inapplicable to the facts of this case. The jury's verdict finds that the release of water by the defendant was intentional and knowing and was not the result of an accident. The special verdict cannot be used to find other intentional conduct on the part of the defendant. Specific questions concerning whether the defendant intentionally damaged the plaintiffs or intentionally invaded the plaintiffs' property were not submitted to the jury. The plaintiffs' argument is without merit.

 The parties also attack the apportionment of liability and the determination of the right to contribution. The determination and apportionment of negligence is for the trier of fact to determine and will not be set aside if supported by competent and substantial evidence. *Nelson v. Northern Leasing Co.*, 104 Idaho 185, 657 P.2d 482 (1983); *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). *See also* I.C. § 6–803. Contribution is available only when a party has paid more than its pro rata share of a judgment. *Masters v. State*, 105 Idaho 197, 668 P.2d 73 (1983); I.C. § 6–803(1). Because we remand for a new trial, it will be up to the trier of fact to determine the relative negligence, if any, among the parties.

Because we remand this action to the trial court, it is unnecessary to discuss other assignments of error raised by the parties. An analysis would not materially aid in determining the outcome of this action.

## CONCLUSION

In conclusion, we hold that the trial court erred in determining that SRCC had a duty

of flood control. We reverse the trial court's judgment and remand for a new trial. The trial court improperly excluded evidence as to prior years' operating experience, a possible plugging of the culvert, evidence as to the natural carrying capacity of Salmon Falls Creek, and evidence as to what the Salmon Falls Creek flow would have been in 1984 without the dam.

The trial court also erred in determining that the highway districts were immune from liability. We find based upon the record before us that there are material issues of fact as to whether the highway districts fulfilled the requirements of I.C. § 6–904. We remand this issue back to the trial court for proceedings consistent with this opinion.

Costs to appellant.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.