45 P.3d 810

Debra CLARK, individually and as personal representative of the Estate of Corey Ayres, Allen Ayres, and Estate of Corey Ayres, Plaintiffs–Appellants,

v.

Frederick J. KLEIN, M.D., Defendant–Respondent,

and

St. Alphonsus Regional Medical Center, Defendants.

No. 26652.

Supreme Court of Idaho,
Boise, December 2001 Term.

March 5, 2002.

Rehearing Denied May 2, 2002.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent. Joseph D. McCollum, Jr. argued.

TROUT, Chief Justice.

This is an appeal from a medical malpractice action by Debra A. Clark (Clark) and Allen Ayres (Ayres) (collectively "Appellants") involving the death of their son, Corey Ayres, in which a jury rendered a verdict in favor of Respondent Fredrick J. Klein, M.D. (Klein). We reverse and remand for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

During the late evening of August 3, 1997, or early morning of August 4, 1997, Corey Ayres (Corey) was injured on Pleasant Valley road, south of Boise. Corey, who was nineteen years old at the time, was apparently kneeling on the back bumper of a pickup truck one of his friends was driving on a dirt road, pretending that he was running behind the pickup, when the pickup hit a bump causing Corey to strike his abdomen on the tailgate of the pickup. After the incident, Corey complained to his friends that he was in pain and they took him to St. Alphonsus Hospital.

At the hospital, Klein examined Corey and requested a CT scan and X-rays. The tests were negative and about two hours after arriving, during the early morning of Sunday, August 4, Klein released Corey to his mother, Clark. Klein told them that Corey would be sore for a couple of days, but that he could return to work when he felt better. The discharge nurse gave Clark instructions as directed by Klein at the time of his release. Corey was given a sample packet of Tylenol with codeine for pain and the nurse told Clark to contact the hospital if Corey vomited, his fever worsened, or his pain increased.

Corey slept most of Sunday and apparently he ate and drank intermittently. On Monday, August 5, at approximately 5:00 a.m., Clark checked on Corey and found that he was still asleep. Clark went to work and

Lojek Law Offices, Boise, for appellant Clark. Donald W. Lojek argued.

Jim C. Harris, Boise, for appellant Ayres.

called Corey about half an hour later from work and he told her that he was not feeling any better. She told him to take his medication and if that did not help, she would come home. About forty-five minutes later, Clark's daughter called Clark at work and told her Corey had collapsed on the floor and she did not know whether he was breathing. The paramedics were called but were unable to revive Corey, and he died on Monday, August 5, 1997.

An autopsy was performed following Corey's death, which revealed that he had a small tear in his intestine allowing the contents of his intestine to leak into his peritoneal cavity, resulting in an infection (peritonitis), which was the cause of his death.

On March 9, 1998, Clark and Corey's father, Ayres, filed a complaint and demand for a jury trial in the 4th Judicial district court, seeking damages for wrongful death against Klein and St. Alphonsus Medical Center. Initially, Lojek law offices represented both Clark and Ayres, but after the complaint was filed, Ayres retained separate counsel, Jim C. Harris. The claim against St. Alphonsus was subsequently settled and the claim against Klein was tried before a jury, commencing on May 9, 2000.

At trial, Dr. Renee Bourquard (Bourquard) was allowed to testify as an expert, over Clark's objection. Clark objected that Bourquard, and the substance of her testimony was not properly disclosed, despite the fact that Clark had asked Klein in one of her interrogatories to identify any expert witnesses he planned to call at trial and the substance of their testimony. The trial judge also refused to allow Ayres' counsel to cross-examine Klein's witnesses in addition to the cross-examination by Clark's counsel, instead ruling that cross-examination by only one of the plaintiffs was allowed.

At the conclusion of the trial, the jury found in favor of Klein, and final judgment was entered on May 18, 2000. Appellants filed a timely notice of appeal thereafter.

## II.

### STANDARD OF REVIEW

■ "Th[is] Court reviews trial court decisions admitting or excluding evidence, including the testimony of expert witnesses, under the abuse of discretion standard." *Morris By and Through Morris v. Thomson,* 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997) (citing *Burgess v. Salmon River Canal Co. Ltd.,* 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)). In the case of an incorrect ruling regarding evidence, a new trial is merited only if the error affects a substantial right of one of the parties. *Morris,* 130 Idaho at 144, 937 P.2d at 1218 (citing I.R.C.P. 61; I.R.E. 103; *Burgess,* 127 Idaho at 574, 903 P.2d at 739; *Hake v. DeLane,* 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990)).

■ Rulings of the trial court regarding cross-examination of a witness are also subject to an abuse of discretion standard of review. *See Boeck v. Boeck,* 29 Idaho 639, 161 P. 576 (1916). The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason. *Sun Valley Shopping Center Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ The propriety of jury instructions is a question of law over which this Court exercises free review, and "[t]he standard of review of whether a jury instruction should or should not have been given, is whether there is evidence at trial to support the instruction," see *Holzheimer v. Johannesen,* 125 Idaho 397, 400, 871 P.2d 814, 817 (1994), and whether the instruction is a correct statement of the law. *See State v. Nunez,* 133 Idaho 13, 19, 981 P.2d 738, 744 (1999).

## III.

### THE TRIAL JUDGE ERRED BY ALLOWING BOURQUARD TO TESTIFY

Idaho Rule of Civil Procedure 26(b)(4) provides that a party can request that the op-

posing party set forth the identity of the opposing party's expert witnesses and the substance of the experts' opinions. Rule 26(e) imposes a duty on parties to seasonably update interrogatory responses and provides that the "trial court may exclude the testimony of witnesses or the admission of evidence not disclosed by a required supplementation of the responses of the party." This Court has previously held that a trial court abused its discretion and committed reversible error by allowing expert testimony, which was not properly disclosed in violation of Rule 26. *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991). In *Radmer*, the plaintiffs brought a products liability suit against the defendant Ford Motor Company, alleging that the steering box on the plaintiffs' pickup truck had malfunctioned, resulting in a single vehicle accident that caused property damage and personal injuries to the driver and passenger of the pickup. In preparation for trial, plaintiffs retained an engineering firm to investigate the cause of the accident. One of the engineers in the firm, Swayne, disassembled the steering mechanism and rendered a written report, which concluded, among other things, that the O-ring was defective, causing power steering fluid to leak from the vehicle, which would make the vehicle difficult to steer and was the cause of the accident.

The plaintiffs in *Radmer* deposed Swayne in a videotaped deposition for purposes of preserving his testimony for trial because Swayne was leaving the country. The deposition primarily dealt with Swayne's conclusion that although the lack of power steering fluid would not cause the steering mechanism to "lock up," as the driver of the vehicle had asserted to the police officer, the lack of power steering fluid would make the vehicle difficult to steer, giving the perception to the driver that the steering mechanism was "locked up."

In the meantime, the defendant Ford deposed Swayne's partner, Pool. During the deposition, Pool testified that although he had not conducted an independent investigation, he had examined the written report prepared by his partner, Swayne, and he concurred with its conclusions, particularly that the lack of power steering fluid would not cause actual steering lock up, but might cause such a perception.

The plaintiffs submitted a twenty-eight day pretrial response, indicating that they intended to introduce Swayne's videotaped deposition and also listing Pool as a witness. Five days later, for the first time, Pool undertook his own independent investigation of the accident, including going to the scene of the accident accompanied by plaintiffs' counsel, and taking measurements for an accident reconstruction analysis. Defendant did not learn of Pool's independent testing and his intended testimony regarding that until the first day of the trial, after the jury had been empanelled. The defendant submitted a motion *in limine*, objecting to the presentation of the evidence on the basis that it had not been disclosed through updated discovery responses. The trial court deferred ruling on the motion, ultimately allowing into evidence Pool's testimony.

On appeal, the defendant argued that the trial court committed reversible err by allowing Pool to testify regarding his reconstruction theory. In its analysis of the issue, this Court quoted the language of I.R.C.P. 26(e)(1), stating that the rule "unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon, or otherwise altered in some manner." *Id.* (citations omitted). This Court then quoted the advisory committee to the federal rules, which in reference F.R.C.P. 26 provides:

> In cases of this character [involving expert testimony], a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. . . . Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

*Id.* (quoting Advisory Committee Notes, rule 26, Fed. Rules Civ.Proc., 28 U.S.C.A.) (alterations in original). This Court also quoted one scholar for the proposition that:

It is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pretrial discovery, particularly when expert witnesses are involved.... Before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he [or she] must have some idea of the bases of that opinion and the data relied upon. If an attorney is required to await examination at trial to get this information, he [or she] often will have too little time to recognize and expose vulnerable spots in the testimony.

*Id.* (quoting Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan.L.Rev. 455, 485 (1962)) (ellipses in original); *see also Hopkins v. Duo–Fast Corp.,* 123 Idaho 205, 217–218, 846 P.2d 207, 219–20 (1993) (noting that I.R.C.P. 26(e)(1) obligates counsel to supplement discovery responses, particularly the substance of an expert's testimony).

In *Radmer,* this Court noted that the plaintiffs had failed to update their discovery responses to reflect that Pool might testify to his reconstruction analysis, and only stated that he may testify to " 'the condition of the parts on the vehicle involved in the incident and the cause of the loss of steering.' " *Radmer,* 120 Idaho at 89, 813 P.2d at 900. This Court thus concluded that "[the plaintiffs] breached their obligation to supplement their discovery responses prior to trial, as required by rule 26, and as a result Ford was unprepared to meet and effectively challenge [the plaintiffs'] new theory of liability and

was prejudiced thereby. Accordingly, we hold that the trial judge committed reversible error in allowing the testimony to come in and remand the case for a new trial." *Id.* at 91, 813 P.2d at 902..

■ In the present action, Appellants made a Rule 26(b)(4) request about two years before the trial began, and Klein responded that he had not yet decided which expert witnesses he would call, but he reserved the right to update his response. Klein did not update his response to Appellants' 26(b)(4) request to include Bourquard until after the trial had begun, but Bourquard was allowed to testify over Appellants' objection. Klein asserts that Appellants had notice that Bourquard might be called as an expert witness because she was disclosed by Klein as an expert witness in accordance with the court's scheduling order on January 3, 2000.[1] Even though she was disclosed as a possible expert, however, the substance of Bourquard's testimony was not disclosed at that time as required by Appellants' Rule 26(b)(4) interrogatory.[2] Moreover, the substance of her testimony was not ever disclosed in compliance with Rule 26(b)(4), even at trial within days of her testimony. The transcript reveals that in open court Klein's counsel indicated that Bourquard would serve as an anatomical expert and a causation witness; however, he did not disclose that Bourquard would testify that:

It would appear to me that what I was describing earlier of a piece of intestine that is bruised, crushed, beginning to leak some bacteria and/or fluid across the wall, but it is not burst apart, was what happened to him in his injury, and that allows him to go along for the whole next day and night without a whole lot of change. And

---

1. The trial judge indicated that because Bourquard was on the witness list on January 3, 2000, and Appellants chose not to depose her, or did not make a motion to compel the substance of her testimony, Klein is excused from compliance with I.R.C.P. 26. Considering the financial and time burdens of depositions, however, it is not reasonable to expect parties to depose every expert witness listed. As Appellants point out, if a motion to compel is required to force compliance with the rules of discovery, it puts the burden of compliance on the wrong (innocent) party, and the district court abused its discretion in indicating that a motion to compel is required by the

party seeking exclusion of an expert witness for noncompliance with Rule 26.

2. During oral argument, all parties seemed to concur that they had some informal oral agreements regarding the extension of discovery deadlines, although the precise nature of the agreements was uncertain. This Court certainly encourages parties to work together in such a manner, but unless the agreements are clear, they do not excuse noncompliance with the rules of discovery.

then suddenly something happens to cause the intestine to be torn open, and the only thing time-wise in the discussion was that I believe he vomited in the morning when he thought he was coming apart, somewhere in that timeframe.

My assumption would be that the two-centimeter hole tore open at that time. . . .

This was the first time anyone had suggested that the tear in Corey's intestine was not present when Klein discharged him from the hospital. Whether Corey was released from the hospital with a two-centimeter tear in his intestine goes beyond causation and it goes to the standard of care. Whether releasing Corey was a breach of the standard of care, of course, depends on the condition he was in at the time of his release from Klein's care. Because this was the first time that this theory was advanced that Corey did not have the hole in his intestine at the time of his release, Appellants did not have an opportunity to prepare cross-examination or to offer rebuttal testimony. In fact, when Bourquard testified, Appellants' expert witnesses had been excused and had apparently left town, so, Appellants were prejudiced by the ruling that allowed the testimony. Although the trial judge perceived the issue of the testimony as one of discretion, his indication that the burden was on Appellants to file a motion to compel the substance of the testimony was outside the bounds of his discretion and it fails the second part of the *Sun Valley* test. We therefore reverse and order a new trial on that basis.

## IV.

### OTHER ISSUES RAISED ON APPEAL

Because we order a new trial on the foregoing basis, it is not necessary to rule on the other issues raised on appeal. However, "[w]here an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Urrutia v. Blaine County,* 134 Idaho 353, 359, 2 P.3d 738, 744 (2000) (citations omitted). We therefore set forth the following for guidance on remand.

### A. The Jury Instructions

When reviewing jury instructions, this Court must determine whether as a whole, the jury was adequately and properly instructed. *Wooley Trust v. DeBest Plumbing, Inc.,* 133 Idaho 180, 182, 983 P.2d 834, 836 (1999). If the instructions as a whole, and not individually, fairly and adequately present the issues and state the applicable law then no reversible error is committed. *Sherwood v. Carter,* 119 Idaho 246, 256, 805 P.2d 452, 462 (1991) (citations omitted). The burden is on the appellant to show prejudicial error from an erroneous jury instruction, and it must be clearly shown. *Burgess v. Salmon River Canal Co.,* 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991).

In the present case, Appellants objected to Instruction No. 18 because it states that "[t]he mere fact that an undesirable or unfortunate result occurs following medical care rendered by the Defendant does not, of itself, establish a breach of the standard of care." Although in *Jerome Thriftway Drug, Inc. v. Winslow,* 110 Idaho 615, 717 P.2d 1033 (1986), we found the trial court did not abuse its discretion in giving a jury instruction that provided "the mere occurrence of a fire does not raise a presumption nor an inference of negligence," IDJI 217 specifically provides that an instruction should not be given that states "negligence may not be presumed from the fact of an accident alone."

Appellants also complained of Instruction No. 18 because it singled out and specifically named Klein as an expert witness. There is nothing prohibiting Klein from being an expert witness in a trial in which he was a defendant. *See Nishi v. Hartwell,* 52 Haw. 188, 473 P.2d 116 (1970). Although the instruction singles out Klein as an expert without naming other experts, which would tend to give his testimony more weight with the jury than other experts, that in and of itself does not rise to the level of reversible error.

### B. Cross Examination

"[C]ontrol of the scope of cross-examination is left to the sound discretion of the trial court." *State v. Hairston,* 133 Ida-

**160**

ho 496, 988 P.2d 1170 (1999) (citing IRE 611(b); *State v. Jesser*, 95 Idaho 43, 49, 501 P.2d 727, 734 (1972); *see also Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1987). Idaho Rule of Evidence 611(a) also provides in part that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence...." IRE 611.

 Although vested with broad discretion, a trial court cannot completely deny a party the right of cross-examination. *See, e.g., Mueller v. J.C. Penney Co.*, 173 Cal. App.3d 713, 721, 219 Cal.Rptr. 272 (Cal.App. 1985); (citing *McCarthy v. Mobile Cranes, Inc.*, 199 Cal.App.2d 500, 18 Cal.Rptr. 750 (1962)) ("The interests of justice are best served by permitting to all parties the right of cross-examination of any witness called."). *See also Simon v. Carroll*, 241 Minn. 211, 62 N.W.2d 822, 827 (1954).

 In the present case, Clark and Ayres are separate parties with separate interests. This is not a case where a single party is represented by more than one counsel, where the limitation to cross-examination by a single counsel might have been an appropriate exercise of discretion. Clark and Ayres are no longer married to each other and they may have suffered different damages as a result of Corey's death. These differences in interest require that each party be allowed to cross-examine witnesses. We need not decide whether the trial judge's ruling was reversible error, but completely excluding cross-examination by Ayres, who was represented by separate counsel was outside the bounds of the trial judge's discretion.

## V.

### CONCLUSION

It was reversible error for the trial judge to allow Bourquard to testify and, therefore, we reverse and remand for a new trial. We award costs to Appellants on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.