# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42538-2014

| | | |
|---|---|---|
| PEND OREILLE VIEW ESTATES, OWNERS' ASSOCIATION, INC., | ) ) ) | Moscow, September 2016 Term |
| Plaintiff/Respondent, | ) ) | 2016 Opinion No. 112 |
| v. | ) ) | Filed: November 1, 2016 |
| T.T. LLC, an Idaho limited liability company; NADIA BEISER; DAVID M. RICHARDS; MARY BETH GIACOMO; and MATTHEW A. FARNER, | ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants/Appellants, | ) ) | |
| MATTHEW A. FARNER and MARY BETH GIACOMO, | ) ) ) ) | |
| Third-Party Plaintiffs/Appellants | ) ) | |
| v. | ) ) | |
| THERESA ZIRWES, | ) ) | |
| Third-Party Defendant/Respondent. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Bonner County. Hon. Barbara A. Buchanan, District Judge.

The judgment of the district court is affirmed.

Brent C. Featherston, Featherston Law Firm Chtd., Sandpoint, argued for appellants.

Peter C. Erbland, Lake City Law Group PLLC, Coeur d'Alene, argued for respondent.

EISMANN, Justice.

This is an appeal out of Bonner County from a judgment upholding money judgments against lot owners in phase two of a subdivision for assessments made for the cost of paving a road across phase one of the subdivision that provides access from the county road to phase two. We affirm the judgment of the district court.

## I.
## Factual Background.

This lawsuit involves a subdivision named Pend Oreille View Estates, which was developed in two phases. The first phase ("Phase I") consisted of 20-acre tracts, and the second phase ("Phase II") consisted of 60-acre tracts. On July 26, 1994, the developer recorded the declaration of covenants, conditions, and restrictions for Phase I ("Phase I CC&Rs"), and an amendment to the Phase I CC&Rs was recorded on January 20, 1995.

On February 15, 1995, Pend Oreille View Estates Owner's Association, Inc. ("Association"), was incorporated. Its stated powers were to "provide for the acquisition, construction, management, operation, administration, maintenance, repair, improvement, preservation, insurance, and architectural control of Association property within that certain subdivision in Bonner County, Idaho, commonly known as Pend Oreille View Estates, Phase I."

On January 25, 1995, the developer recorded the declaration of covenants, conditions, and restrictions for Phase II ("Phase II CC&Rs"), and an amendment to the Phase II CC&Rs was recorded on May 31, 2005. The Phase II CC&Rs required that each owner of property in Phase II must be a member of the Association.

The Association desired to pave the roads that went from the public road, across Phase I, to Phase II because of the dust created by vehicles on the roads and the cost of maintaining unpaved roads. It sent its members notice of a special meeting to be held on July 24, 2012, to vote on an amendment to the bylaws to permit a special assessment on the members to pay for the paving of the roads. On February 17, 1995, the members of the Association voted to adopt an amendment to the bylaws, which provided for special assessments on the members to pave the roads in Phase I. The Association decided to pave the roads that went from the public road, across Phase I, to Phase II. On July 24, 2012, the members voted to adopt the proposed amendment, which stated as follows:

4.02.01 *One Time Road Paving Assessment.* There will be a one-time assessment assigned to each tract owned by the members of POVE I [Phase I] and POVE II [Phase II] to facilitate the paving of Turtle Rock Road, Redtail Hawk Road and Destiny Lane. Billing will be assessed by distance from Baldy Mountain Road to the P.O.V.E. Member's property. Invoices were mailed July 25, 2012 and payment is due Sept. 23, 2012. Paving to commence in late September, 2012.

After the amendment, the Association sent notices of assessments to all of its members who owned property in Phases I and II. T.T., LLC, Nadia Beiser, David M. Richards, Mary Beth Giacomo, and Matthew A. Farner (collectively "the Defendants") all owned real property in Phase II. The Association sent them bills for their respective assessments. When they did not pay the assessments, the Association recorded liens against their properties.

On November 12, 2013, the Association filed this action seeking foreclosure of the liens and money judgments against the Defendants for the amounts of their respective assessments. Ms. Giacomo and Mr. Farner filed a counterclaim against the Association for slander of title, quiet title, an injunction, and a declaratory judgment, and they filed a third party complaint alleging the same claims against Theresa Zirwes, the Association's secretary/treasurer who signed and recorded the lien claims.

On May 19, 2014, the Association moved for summary judgment, and on June 11, 2014, the Defendants moved for summary judgment. After the motions were briefed and argued, the district court granted the Association's motion and denied the Defendants' motion. On July 23, 2014, the court entered a judgment awarding the Association the sum of $41,540.34 against T.T., LLC, Nadia Beiser and David M. Richards on count one; the sum of $23,740.17 against Beth Giacomo and Matthew A. Farner on count two; and the sum of $23,740.17 against Beth Giacomo and Matthew A. Farner on count three, and it dismissed the counterclaims and third party claims with prejudice. On August 6, 2014, the Defendants filed a motion to reconsider. After argument and briefing, the court denied that motion. On January 20, 2015, the court entered an amended judgment which added an award against the Defendants in the sum of $46,176 for court costs and attorney fees. The Defendants then timely appealed.

## II.
## Did the District Court Err in Granting the Association's Motion for Summary Judgment?

A trial court may grant a motion for summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In an appeal from a summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id*. at 47, 44 P.3d at 1102.

On appeal, the Defendants contend that the paving project was an improvement of the roads, not the maintenance of the roads, and that the Phase II CC&Rs do not permit the association to levy assessments for road improvements. They also contend that the Phase II CC&Rs only permit assessments for the maintenance of roads that the Association is required to maintain, and the Phase I CC&Rs do not require the Association to maintain any roads in Phase I. As will be shown, the issue in this case is whether the amendment to the bylaws prevails over certain provisions in the Phase II CC&Rs.

The applicable provisions in the Phase II CC&Rs are:

**Phase II CC&Rs:**

> **2.03. Powers of the Association.** The association shall have the power to do all the things enumerated in the CCR's for Phase I as recorded as Instrument No. 449457, records of Bonner County, Idaho. PROVIDED HOWEVER, that except to the extent the Association has the right to enforce the payment of the lawful assessments of the Association pertaining directly to the maintenance of roads that the CCR's for Phase I, recorded as Instrument No. 449457, records of Bonner County, Idaho, require the Association to maintain, including the right to any lien on any Tract for failure to pay any assessment(s) lawfully due the Association, the powers of the Association shall not extend to the Phase II property herein described.
>
> **2.04. Limitation on Powers.** . . . The Association shall not have the power to levy any assessments against owners in Phase II except such assessments as pertain directly to the maintenance of roads as referred to in the CCR's, recorded as Instrument No. 449457, records of Bonner County, Idaho, require said Association to maintain.

Section 2.03 of the Phase II CC&Rs provides that the powers of the Association do not extend to the Phase II property, except to the extent that the Association "has the right to enforce

the payment of the lawful assessments of the Association pertaining directly to the maintenance of roads that the CCR's for Phase I . . . *require* the Association to maintain," which includes the right to lien any tract in Phase II "for failure to pay any assessment(s) lawfully due the Association." (Emphasis added.) The Phase I CC&Rs do not *require* the Association to maintain any roads. They only *permit* it to do so. Section 2.04(d) of the Phase I CC&Rs states:

**Phase I CC&Rs:**

**2.04 Powers of Association.** The Association, in its sole and absolute discretion, and as more fully set forth in its Articles and By-Laws, shall have the power to perform the following acts:

. . . .

d) The Association *has the right and power* to contract for the purchase of tools, equipment, materials, supplies and other personal property and services for the *maintenance and repair* of the private road(s) and/or to contract for and pay for reconstruction of any portion or portions of the private road(s), damaged or destroyed;

Thus, the Defendants contend that the paving of the roads in Phase I constituted an improvement of the roads, not the maintenance of the roads, and that the Association could not assess Phase II property owners for the improvement of the roads in Phase I because it was not required to maintain those roads.

However, the Phase II CC&Rs state that the Association "shall have the power to do all the things enumerated in the CCR's for Phase I." The Phase I CC&Rs permit the Association to levy and collect assessments, which constitute a lien on the tract, and to enforce the bylaws and articles of incorporation. The applicable provisions of the Phase I CC&Rs are as follows:

**Phase I CC&Rs:**

**2.04 Powers of Association.** The Association, in its sole and absolute discretion, and as more fully set forth in its Articles and By-Laws, shall have the power to perform the following acts:

a) The Association shall have the right and power to levy and collect assessments, which levy shall constitute a lien on said Tract, enforceable as by law provided;

b) The Association shall have the right and power to enforce the provisions of this Declaration, the By-Laws and the Articles of Incorporation: nothing, however, contained in this paragraph shall be construed to prohibit enforcement of same by an Owner;

. . . .

g) The duties and powers of the Association are those set forth in this Declaration, its Articles of Incorporation and By-Laws, together with its general implied powers as a non-profit corporation, generally to do any

5

and all things that a corporation authorized under the laws of the State of Idaho may lawfully do which are necessary and proper in operating for the peace, health, comfort, safety and general welfare of its members, subject only to the limitations upon the exercise of such powers prohibited by law;

Thus, the Phase II CC&Rs permit the Association to "do all the things enumerated in the CCR's for Phase I," and the Phase I CC&Rs state that the Association has the right and power to enforce the articles of incorporation and the bylaws.

The articles of incorporation of the Association state that its purpose is to "provide for the . . . maintenance, repair, [and] improvement . . . of Association property." The articles also state that the Association shall have the power to "fix, levy, collect and enforce the assessments and fines as may be set forth in the Declarations and by-laws" and that "[t]he membership of the Association shall be governed by its by-laws, duly adopted." The articles also provide that assessments may be levied against the members as set forth in the bylaws and that the assessments may be secured by a lien. That provision states:

Assessments may be levied upon the membership as set forth in the by-laws. The manner of assessment and collection of such levies shall be determined by the directors, and as provided in the by-laws, provided that assessments may be secured by a lien in the real property to which the membership is appurtenant, and may be enforceable by action and/or forfeiture of membership as by law provided.

The bylaws were amended to permit the Association to make a one-time assessment against each tract in Phases I and II for the paving of the roads in Phase I. There is no contention that corporate bylaws cannot be amended, and the Association clearly had the right to do so. I.C. § 30-3-97 (2013). Thus, the issue is whether that bylaw amendment overrides the contrary provisions in the Phase II CC&Rs, particularly where all the members can vote on the amendment but only owners of tracts in Phase II could vote on an amendment to the Phase II CC&Rs. The Defendants did not present any argument or authority on that issue. They merely state:

The [District] Court never explains from where the Association derives its authority to make this special assessment in excess of the limits in § 4.02. If the Trial Court assumed that the powers to amend the Bylaws, as provided therein, also empowered this *One Time Road Paving Assessment*, the Court failed to explain how the authority in an unrecorded Bylaw could override the Phase II CC&Rs and their limits on the Phase I Association.

6

It is insufficient to merely state that the trial court did not provide authority for its ruling. "Error will not be presumed on appeal, it must be clearly shown. The burden is upon the appellant to show prejudicial error." *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991). The appellant also has the burden of providing in the opening brief argument and authority showing such error. *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012). Because the Defendants did not present argument and authority regarding the issue of whether the bylaws amendment could override the provisions in the CC&Rs, we will not consider this issue on appeal. Because the bylaws amendment permitted a one-time assessment for paving the roads in Phase I, the failure to raise the issue of whether the amendment prevailed over contrary provisions in the Phase I and II CC&Rs also renders moot any issue as to whether the paving constituted maintenance or an improvement.

The Defendants assert that the original bylaws prohibited the amendment. They rely upon the following provisions in the original bylaws:

> SECTION 4: MEMBERSHIP ASSESSMENTS AND LIEN RIGHTS.
>
> 4.01. *Regular Assessments.* The initial annual assessment of $50.00 per Tract will start in calendar year 1996. The Board may not, without a vote of a majority of the Tracts, increase the regular annual assessments during any calendar year of the Association by more than twenty percent (20%) above the regular annual assessment for the preceding year. Declarant shall pay all assessments levied by the Association against any Tract owned by it at the same time and in the same manner as any other Owner.
>
> 4.02. *Special Assessments.* Any special assessment must be recommended by the Board and be approved by a vote of a majority of the voting power of each member. In any year, a special assessment may not exceed one hundred percent (100%) of an annual assessment.
>
> 4.03. *Assessments a Lien.* All assessments, together with interest on unpaid assessments at the rate of ten percent (10%) per annum, shall be a charge on the land and a continuing lien upon the Tract until paid. All assessments shall also be a personal obligation of each Tract Owner. Interest shall not accrue on any assessments that are paid within thirty (30) days of the due date.

In support of this assertion, the Defendants state: "The District Court makes no explanation for how the 'one-time assessment' is an exception permitted by § 4.02. Presumably, the Court deems this an amendment to the bylaw as provided in Section 10 of the Bylaws." The Defendants along with the other owners of tracts in Phases I and II were given notice of a special meeting to amend the bylaws to permit the one-time assessment, and that amendment was approved at such meeting. The amendment obviously created an exception to section 4.02.

Finally, the Defendants contend that the liens were not authorized by Idaho Code section 45-810. They contend that subsection (1) of the statute only authorizes liens for assessments levied to pay the costs incurred for maintenance and that the paving constituted an improvement, not maintenance. Subsection (1) of that statute provides:

> Whenever a homeowner's association levies an assessment against a lot for the reasonable costs incurred in the maintenance of common areas consisting of real property owned and maintained by the association, the association, upon complying with subsection (2) of this section, shall have a lien upon the individual lot for such unpaid assessments accrued in the previous twelve (12) months.

The district court did not enter a judgment foreclosing the liens or holding that the liens were valid. It only entered monetary judgments for the amounts of the unpaid assessments. If we accept the Defendants' argument that the statute did not authorize liens for assessments levied to pay for the paving, it would not justify setting aside the monetary judgments. It would only justify setting aside the dismissal of the counterclaim and third party claim filed by Ms. Giacomo and Mr. Farner. However, the Association alleged in its amended complaint that levying the assessments and recording the liens were authorized by the statute and by the CC&Rs and bylaws. The Defendants' argument that the paving was an improvement and that the statute did not authorize liens for improvements would justify setting aside the dismissal of the counterclaim and third party claim only if the statute invalidated any provision in the CC&Rs and bylaws that authorized recording liens to enforce assessments levied to pay for improvements. In their opening brief on appeal, the Defendants did not present argument and authority supporting a contention that the statute invalidated such provisions in the CC&Rs and bylaws. Therefore, we will not address on appeal the Defendants' proposed interpretation of the statute because it would not justify setting aside any part of the judgment. *Bolognese*, 153 Idaho at 866, 292 P.3d at 257.

### III.
### Is Either Side Entitled to an Award of Attorney Fees on Appeal?

The Defendants seek an award of attorney fees on appeal pursuant to Idaho Code section 12-121 and an attorney fee provision in the Phase II CC&Rs. Both the statute and the attorney fee provision only provide for the awarding of attorney fees to the prevailing party. Because the

Defendants are not the prevailing party on appeal, they are not entitled to an award of attorney fees on appeal.

The Association also seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121, the attorney fee provision in the Phase II CC&Rs, and the attorney fee provision in the bylaws. The bylaws provide that "in any action for enforcement of this provision [regarding assessments that remain delinquent for more than thirty days], the Association shall be entitled to its costs and reasonable attorney's fees, so long as the Association is the prevailing party in such action." The Association is the prevailing party in this appeal, and it is therefore entitled to an award of attorney fees on appeal. Because we award attorney fees under this bylaws provision, we need not address the other two bases for the award.

## IV.
## Conclusion.

We affirm the amended judgment of the district court, and we award Respondent costs and attorney fees on appeal.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**